EL PUEBLO DE PUERTO RICO, demandante y apelado, v.
VICENTE PÉREZ DÍAZ, acusado y apelante.

*Número:* CR-70-93    *Resuelto:* 23 de marzo de 1971

*Vicente Pérez Díaz, pro se; Enrique González* y *Ángel S. Pérez González,* abogados del apelante; *Gilberto Gierbolini, Procurador General, Federico Rodríguez Gelpí* y *Américo Serra, Procuradores Generales Auxiliares,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Recurre el apelante de la sentencia del Tribunal Superior, Sala de Bayamón, que lo declaró incurso en desacato y le impuso una multa de $25. Por los fundamentos que expresamos más adelante concluimos que debe confirmarse dicho dictamen.

En síntesis, los hechos que dieron lugar a la cuestión que nos ocupa fueron los siguientes:

(1) En los casos *E.L.A.* v. *Llovet, etc.,* Civil Núm. CS-68-2002 y Civil CS-68-1957, pendientes en el Tribunal Superior, Sala de Bayamón, el Hon. Juez Cándido Ceballos, dictó una orden en 27 de febrero de 1969 por la que citó a los demandados Llovet y Otero a comparecer el día 17 de marzo de 1969 a mostrar causa por la cual no debían ser castigados por desacato.

(2) Esta orden fue debidamente notificada al letrado ape-
lante como abogado de los demandados el 28 de febrero de
1969.

(3) En 14 de marzo de 1969 se radicó en dichos casos
una moción suscrita por el letrado Miguel Quiñones Vázquez
en que solicitó primeramente que, como los casos estaban
señalados para verse en su fondo el 5 de junio de 1969, se
consolidasen ambas vistas para dicha fecha y hora y, segundo,
"De no ser posible dicho señalamiento del Hon. Tribunal
*se solicita un término adicional para comparecer los deman-
dados representados por los abogados de su selección toda vez
que no han podido comunicarse ni hacer arreglos con el Li-
cenciado Vicente Pérez Díaz que ha de ser el abogado en estos
casos.*" Por último, informó el letrado Quiñones Vázquez en
dicha moción que él no podía representar a los demandados
en la vista del día 17 de marzo de 1969 por tener otros casos
señalados en el Tribunal Superior, Sala de San Juan. (Én-
fasis nuestro.)

(4) El día de la vista sobre el desacato, la parte pro-
movente de la moción para que se castigase a Llovet y Otero
por desacato, compareció y manifestó estar lista. Según indica
en su alegato la representación del apelante, el demandado
Llovet compareció solo a la vista. Manifestó al tribunal que
"El abogado mío no vino porque tenía un caso en Ponce y
entonces hubo que someter una moción de suspensión porque
se cambió de abogado . . . . Pusimos otro abogado porque
él se fue para Ponce y yo traté de conseguirlo el jueves y
el viernes y no pude conseguirlo, y entonces tuve que ha-
cer . . . que utilizar otro abogado para hacer . . . ." El abo-
gado de la promovente indicó que no se le notificó la moción
de suspensión. Anunció entonces el tribunal por voz del Hon.
Juez Meléndez Vela, que iba a ver el caso porque iba a dictar
una orden contra el apelante. Por último, informó el tribunal
que ". . . el abogado es Vicente Pérez Díaz y ese abogado no
ha renunciado; de la moción pidiendo la suspensión surge

que Pérez Díaz ha de ser el abogado que lleve el caso en su fondo, Pérez Díaz tiene una notificación de este señalamiento y no ha comparecido al Tribunal y no ha dado excusa alguna por su incomparecencia; aparece un abogado de nombre Quiñones Vázquez diciendo que no puede comparecer a este Tribunal porque tiene casos señalados previamente, en otras palabras, permitir que esto ocurra es poner el calendario bajo el control exclusivo de los abogados de las partes y el Tribunal entonces abrir sala y sentarse a esperar a ver si los abogados han decidido ver el caso o han decidido no verlo y suspenderlo por su cuenta. Esa no es la forma que trabaja este Tribunal, reiteradamente hemos dicho eso para récord."

(5) Acto seguido el tribunal de instancia dictó una orden dirigida al apelante al efecto de que "La parte demandante ha comparecido en el día de hoy lista para entrar a la vista de este incidente, pero habiendo el demandado alegado que está sin representación legal debido a la incomparecencia del licenciado Vicente Pérez Díaz, el Tribunal se ve precisado a suspender la vista del incidente de desacato señalada para hoy por la única circunstancia de la incomparecencia del abogado de los demandados . . . . Esta incomparecencia es a todas luces injustificada y constituye un menosprecio a la orden del Honorable Juez Ceballos que le fue notificada por la Secretaría al abogado antes mencionado en 28 de febrero de 1969 . . . . El Tribunal entiende que la conducta del Licenciado Vicente Pérez Díaz al hacer caso omiso de la orden de este Tribunal que le citaba para comparecer en el día de hoy a la vista de este incidente constituye un menosprecio de dicha orden lesiva a la autoridad del Tribunal, ordena por tanto al aludido abogado a que comparezca a esta Sala el día 24 de marzo de 1969 a las nueve de la mañana a mostrar causa por la cual no pueda ser condenado por desacato." A esos efectos dictó la correspondiente orden para mostrar causa en la que se hizo una relación detallada de los hechos que la motivaba.

(6) Al iniciarse la vista celebrada en 24 de marzo de 1969 el apelante pidió la suspensión de la vista porque su abogado, el Lic. Enrique González, que habría de representarlo en esta vista no había comparecido debido a que no se había terminado la vista de un caso criminal en el cual dicho abogado representaba al acusado. Se denegó dicha suspensión por no haberse gestionado oportunamente y se ordenó la continuación de la vista ya que el apelante estaba representado por otro letrado.

La prueba aducida por el apelante fue la siguiente:

(a) El testimonio del demandado Miguel Ángel Llovet al efecto de que es el demandado representado por el apelante en unos casos de *injunction*; que el apelante fue siempre diligente hasta "El día que hubo que suspender el caso porque él no podía venir"; que vio al apelante un viernes cuando la vista [la de desacato del testigo por incumplimiento de la orden de entredicho] estaba señalada para el siguiente lunes hecho conocido por el apelante y por el testigo; que en cuanto a gestionar la suspensión de la vista "El hizo una serie de gestiones por teléfono y no pudo. Primero trató de comunicarse con la corte y no pudo. Entonces me envió a donde el compañero de él, Miguel Quiñones, para que resolviera la situación porque él no podía comparecer; que él le llevó los casos de injunction originalmente al Lic. René Muñoz Padín quien tenía oficinas conjuntas con el apelante; que el Lic. Quiñones Vázquez redactó la moción de suspensión radicada ese mismo viernes, 14 de marzo de 1969."

(b) El testimonio del letrado René Muñoz Padín al efecto de que Llovet llevó unos casos a su oficina cuando el apelante trabajaba en ella, habiéndose confiado el de *injunction* al apelante; que Llovet fue a verlo con motivo del señalamiento para el 17 de marzo de 1969; que existían conflictos de señalamientos en los casos criminales confiados al testigo y el de *injunction* y entre el señalamiento en éste y el de otros casos en Ponce del apelante; que no encontró al apelante en

su oficina y entonces el letrado Quiñones Vázquez preparó la moción de suspensión en la oficina del testigo; el apelante durante los ocho años que estuvo en su oficina fue sumamente cumplidor y "nunca había habido un incidente."

(c) El testimonio del apelante al efecto de que "La declaración del señor Llovet y la declaración del compañero René Muñoz Padín en todas sus partes las hago parte de mi testimonio porque esa es la verdad de lo que ocurrió en esta relación . . . . Quiero decirle con todo respeto al Tribunal que no fue mi intención, que siempre he representado mis clientes y he comparecido a los Tribunales y en casi veinte años dentro del ejercicio de la profesión es la primera vez que se me enjuicia y que no he cometido nunca un desacato, es más, ni en una argumentación nunca le he faltado el respeto a un juez ni a un compañero que el Tribunal puede decirle. Y desde el 18 de marzo que me lo informó el señor Llovet he tenido grandes preocupaciones y angustias en este asunto. Yo le pido al Tribunal que siendo la primera vez y creo que el Hon. Juez que preside esta sala ha observado mi conducta como abogado en este Tribunal, con el respeto que yo siempre me he dirigido y como siempre he cumplido en las comparecencias de todos los casos, que si el Tribunal en su decisión creyera que yo le he faltado al Tribunal, con la misma entereza de mi carácter le pido al Tribunal mil perdones si he faltado al Tribunal."

(7) Sometido el incidente, dijo el juez sentenciador que:

". . . este es un caso de desacato por incomparecencia del compañero Pérez Díaz. Aquí no se ha aducido un solo argumento una sola razón que justifique esa incomparecencia. Todo lo que se le ha pedido al Tribunal es más bien invocar la misericordia o la conmiseración del Tribunal para que absuelva al compañero Pérez Díaz de su incomparecencia.

La prueba aducida por el compañero no justifica, en forma alguna, su incomparecencia a este Tribunal el día 17 de marzo. La moción que se radicó sobre la cual no recayó providencia alguna, no es justificación alguna de esa incomparecencia y lejos

de orientar es una moción completamente desorientadora cuando por un lado habla de una suspensión a base de que se va a conseguir nuevos abogados, por otro lado de que el demandado va a contratar nuevo abogado, por otro lado habla de que se suspenda la vista porque el compañero ha tenido que salir para Ponce en un caso importante.

. . . El compañero Quiñones Vázquez radicó la moción [de suspensión] y ni siquiera compareció. La radicó el 14 sin que cayera sobre ella providencia alguna y dieron el caso por suspendido sin comparecer el día de la vista a representar al señor Llovet. En ese momento las partes contrarias al señor Llovet estaban listas en Sala para la vista del caso. El señor Llovet compareció y se encontró desprovisto de asistencia legal. Si la radicación de una moción de suspensión fuera a tener el efecto de suspender un caso entonces la facultad de los tribunales para controlar sus calendarios y hacer los señalamientos de los casos habría sido delegada en los abogados y los Tribunales bastaría con hacer los calendarios y esperar que los abogados le dijeran cuándo iban a ir a verlo, si iban a ir ese día o si no iban a verlo con una mera moción de suspensión indicándole que ese día no iban a ver el caso. Esa no es la norma de derecho que rige en los procedimientos judiciales en Puerto Rico.

No hay ninguna razón que justifique la incomparecencia del compañero Vicente Pérez Díaz para su incomparecencia del día 17 de marzo y, por lo tanto, el tribunal lo declara incurso en desacato y le impone veinticinco dólares de multa." (¹) A esos efectos dictó el tribunal la siguiente sentencia:

"Llamado este caso para vista en el día de hoy compareció el acusado asistido de su abogado, Lic. Angel S. Pérez González e hizo alegación de inocente.

Por el resultado de la prueba practicada, el Tribunal declara al acusado Vicente Pérez Díaz Culpable del delito de desacato y lo condena a pagar una multa de VEINTICINCO ($25.00), DOLARES y las costas de esta causa y en defecto del pago inmediato de dicha multa a sufrir un día de cárcel por cada dólar que dejare de pagar."

---

(¹) El tribunal pudo haber impuesto al cliente del apelante el pago de las costas de la comparecencia de la otra parte y de una suma por concepto de honorarios de abogado.

Apunta el apelante que el tribunal incidió al interpretar la orden dictada por el Hon. Juez Superior Cándido Ceballos en el sentido de que iba dirigida al apelante. Apunta, además, que actuó sin jurisdicción al dictar la orden para mostrar causa; que la sentencia es nula porque se dictó sin jurisdicción y no se siguió el debido proceso de ley y porque no se expidió un mandamiento para la multa o prisión, ni se consignó el acto o actos constitutivos o de dicho desacato, así como la fecha y lugar de su comisión y circunstancias de la misma. Por último, apunta que no habiéndose cometido el supuesto desacato en presencia del tribunal, incidió éste al actuar de fiscal y juez y que ejerció la facultad en el caso de desacato fuera de las disposiciones de los estatutos.

Arguye que la actuación del apelante no constituye la obstinada desobediencia a que se refiere la Ley de Desacato (33 L.P.R.A. sec. 517); que el desacato sólo está regido por la ley de 8 de marzo de 1906; que el acto del apelante ocurrió fuera de la presencia del tribunal; que no existe ninguna orden dirigida al apelante en relación con la vista del 17 de marzo de 1969; que el tribunal de instancia violó el debido procedimiento de ley ya que obligó al apelante y a su hermano letrado Pérez González a entrar a juicio aun cuando el apelante tenía a otro letrado como su abogado.

Por el contrario, sostiene el Procurador General que el señalamiento para la vista de 17 de marzo de 1969 fue debidamente notificado al apelante; que el abogado que suscribió la moción de suspensión de dicha vista "es un abogado que no representa oficialmente a ninguna de las partes, no es abogado de récord en el procedimiento y ni siquiera solicita intervención ni comparece en nombre o a pedido del Lic. Pérez Díaz para explicar la incomparecencia de éste a la referida vista"; que "El abogado de récord, Lic. Pérez Díaz, por su parte no presentó solicitud de suspensión alguna *ni comparció* en la fecha indicada. Los propios demandados comparecieron sin asistencia legal"; que la ausencia injus-

tificada del apelante constituyó una "oposición . . . realizada" a la orden del tribunal (de acuerdo con lo dispuesto en la Sec. 3 de la Ley de Desacato); que en caso de que la sentencia no contenga información requerida por la referida Sec. 3, puede devolverse el caso para que se dicte otra.

■ La facultad de condenar por desacato está regida por las siguientes disposiciones de ley;

A.—La ley de 1 de marzo de 1902 (33 L.P.R.A. secs. 517–519) dispone, entre otras cosas, que un tribunal tendrá facultad para castigar por desacato a toda persona culpable de cualquiera de los siguientes actos:

"1 . . .

2. Obstinada desobediencia, u oposición intentada o realizada contra cualquier decreto, mandamiento u orden legal, expedido o dictado por algún tribunal en un pleito o proceso de que estuviere conociendo . . . ."

Dicha ley fija (a) una penalidad de prisión por un máximo de 30 días o multa por no menos de $200; (b) el siguiente procedimiento ". . . Siempre que alguna persona fuere multada o encarcelada por desacato a una corte o a la Comisión Industrial deberá firmarse por el juez o comisionado sentenciador una orden o mandamiento para dicha multa o prisión, consignándose en el mismo el acto o actos constitutivos de dicho desacato, así como la fecha y lugar de su comisión y circunstancias de la misma, con especificación de la sentencia del tribunal, sin lo cual dicha sentencia quedará enteramente nula y sin efecto."

B.—La Regla 242 de las de Procedimiento Criminal que distingue entre el procedimiento sumario que es cuando el juez certifica que vio u oyó la conducta constitutiva de desacato, y el procedimiento ordinario cuando se le dará al acusado, previo aviso, la oportunidad de ser oído y de preparar su defensa.

C.—El Art. 29 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 163), dispone que "Para el ejercicio efectivo de las facultades conferidas por la precedente sección a un funcionario judicial, puede éste castigar por desacato en los casos dispuestos en este Código." Las secciones precedentes disponen que todo funcionario judicial tiene facultad, entre otras cosas, para imponer el orden en los procedimientos seguidos ante él, para obligar a la obediencia y hacer cumplir sus órdenes y providencias, y para dirigir la conducta de sus funcionarios y demás personas que tuvieren algún interés en cualquier procedimiento judicial seguido ante ella o actuación perteneciente a dicho procedimiento. Arts. 7 y 28 del Código de Enjuiciamiento Civil (32 L.P.R.A. secs. 44 y 162).

■ D.—La Regla 40.9 de las de Procedimiento Civil que dispone que el dejar de obedecer sin causa justificada una citación podrá ser considerada como desacato al tribunal. No tenemos duda de que la notificación al apelante de la vista de 17 de marzo de 1969 constituía en derecho una citación al letrado para que compareciese a dicha vista en representación de su cliente.

Dijimos en *Dubón* v. *Casanova*, 65 D.P.R. 835, 844 (1946), que:

"Los casos de desacato son *sui generis*. Estrictamente hablando, no son ni civiles ni criminales; ocupan la zona crepuscular entre casos tradicionales civiles y criminales. *Germán* v. *Corte,* supra; *Sánchez* v. *Romany, Juez,* 53 D.P.R. 596, 598. Sin embargo, los casos de desacato son clasificados como civiles o como criminales para ciertos propósitos, tales como apelación y el tipo de sentencia que se pueda dictar. Es cierto que algunas de las normas invocadas para clasificar un desacato como civil o como criminal son imprecisas y de difícil aplicación. El resultado es que las cortes algunas veces consideran un caso en parte como civil y en parte como criminal. Pero existe una distinción fundamental entre los casos de desacato, civiles y criminales, reconocido por nosotros repetidamente. *En el desacato criminal el procedimiento y la sentencia son punitivos, para vindicar la*

*dignidad y la autoridad de la corte y sirven como freno a los delitos contra el público, independientemente de los derechos de personas privadas; mientras que en el desacato civil tanto el propósito del caso como el remedio obtenido en el mismo son de carácter reparador, para beneficio del querellante.* (Énfasis nuestro.)

Esta diferencia en propósito entre el desacato civil y el criminal hace necesaria una diferencia en el remedio concedido; en los casos criminales se impone un término fijo de prisión o multa; mientras que en el desacato civil se impone prisión compulsoria indefinida. Esto es así porque la prisión por un término fijo es puramente punitiva y no puede tener efecto reparador; cualquier caso en que se imponga tal prisión tiene por tanto que ser clasificado como desacato criminal. Por otro lado, un término fijo no se puede reconciliar con la naturaleza reparadora del desacato civil y no puede imponerse en el mismo; más bien una prisión compulsoria indefinida hasta que el acusado cumpla con la orden desacatada es la *raison d'étre* de un procedimiento de desacato civil.

Es curioso que el poder de nuestras cortes para imponer un remedio coercitivo por tiempo indefinido en un caso de desacato civil nunca ha sido considerado en todos sus aspectos por este Tribunal. En el único caso en que ha sido discutida ampliamente esta cuestión, la dejamos sin resolver. *Germán* v. *Corte,* supra, 63 D.P.R. 612 (1944)."

En *Pueblo* v. *Báez,* 72 D.P.R. 175 (1951), se confirmó una sentencia que declaró a un letrado culpable de desacato criminal consistente en conducirse en corte abierta en forma irrespetuosa y ofensiva hacia el tribunal demostrando desprecio y menosprecio del tribunal condenándolo a pagar $10 de multa. Dijimos en este caso que "Una orden que declara culpable de desacato criminal no debe ser revocada a menos que sea manifiesto que ningún desacato se ha cometido, demostrándose así que la corte ejerció su autoridad caprichosa, opresiva y arbitrariamente." En cuanto al apuntamiento basado en el incumplimiento con el requisito previamente reseñado de la Sec. 3 de la Ley de Desacato (33 L.P.R.A. sec. 519), dijimos que "la sentencia y el mandamiento a que

se refiere dicha sección 3 son dos documentos distintos." Por lo tanto, ante tal incumplimiento dejamos sin efecto la sentencia hasta que el tribunal sentenciador expida una orden o mandamiento de encarcelación de acuerdo con lo provisto en el estatuto y a dicho efecto devolvimos el caso al tribunal de instancia. Véase *Pueblo* v. *Susoni*, 81 D.P.R. 124 (1959).

En *Coll Moya* v. *Alcaide, Cárcel Municipal*, 89 D.P.R. 225 (1963), se atacaron nueve convicciones de desacato dictadas contra un letrado debido a su conducta irrespetuosa. Anulamos siete porque las sentencias no eran precisas y claras al dejar de exponer los hechos con suficiente particularidad, para demostrar, sin necesidad de especulación alguna que el desacato realmente ocurrió sin lugar a conjeturas ni a interpretaciones, debiéndose hacer constar cada incidente de desacato. Dijimos en este caso que "Si no aparecen los hechos que constituye el desacato así consignados . . . [es decir, como se provee en la sec. 3 de la Ley de Desacato (Criminal)— 33 L.P.R.A. sec. 519—] la sentencia es nula."

En *Espinosa* v. *Ramírez, Alcaide de Cárcel*, 71 D.P.R. 10 (1950), dijimos que no obstante haberse omitido al aprobarse el Código de Enjuiciamiento Civil los artículos del Código de Enjuiciamiento Civil de California que proveen sanciones para el desacato civil, los tribunales tienen poder para imponer la sanción adecuada de manera que puedan ejercitar en forma efectiva su poder incidental de hacer cumplir sus sentencias. Véase, *Pueblo* v. *Susoni*, supra.

Dijimos en *Guzmán Vega* v. *Piñero Piñero*, 91 D.P.R. 704 (1965), que desobediencias en cuestiones que promueven interés privado (obligación incumplida de padre de alimentar a hijos impuesta por sentencia de un tribunal) pueden dar lugar a la imposición de castigo como desacato criminal; que en este último caso debe celebrarse una vista, previa citación de la persona afectada con aquellas admoniciones necesarias de modo que él sepa que puede ser castigado cri-

minalmente si saliere convicto y ejerza aquellos derechos y defensas apropiadas en una acción de tipo criminal.

En *Ex Parte Robinson*, 86 U.S. 513, 22 L.Ed. 205 (1873), dictaminó el tribunal que: "La facultad de condenar por desacato es inherente a todos los tribunales; su existencia es esencial para la conservación de orden en los procedimientos judiciales y para hacer cumplir las sentencias, órdenes y autos de los tribunales y, por lo tanto, para la debida administración de la justicia. Desde el momento en que se crearon los tribunales de los Estados Unidos y se les invistió de jurisdicción sobre cualquier asunto, adquirieron tal facultad." Dijo que esta facultad ha sido limitada y regulada mediante legislación.

En *Lyons* v. *Superior Court*, 278 P.2d 681 (Cal. 1955), se condenó a un letrado por desacato consistente en llegar tarde a un tribunal para la continuación de un juicio criminal. El Tribunal Supremo de California resolvió que se trataba de un desacato en la presencia del tribunal por lo que era punible mediante afidávit, notificación y vista según lo provisto en el Código de Enjuiciamiento Civil de California. "Es claro el deber de un letrado de presentarse puntualmente en el tribunal y diligentemente continuar un juicio que ha iniciado y no dilatarlo indebidamente por cualquier razón personal razonablemente bajo su control." En apoyo de tal determinación citó el tribunal las disposiciones de la Sec. 128 del Código de Enjuiciamiento Civil de California (equivalente al Art. 7 del Código de Enjuiciamiento Civil de Puerto Rico—32 L.P.R.A. sec. 44), y las 1209, 1211, 1212 y 1217 del referido Código que no fueron incluidas en el de Puerto Rico. También se hizo referencia a las Secs. 7 y 12 del Código Penal de California. Dijo el referido tribunal que "Estas reglas son sustancialmente reiteraciones de principios que han sido reconocidos y que se han hecho cumplir desde los albores de la jurisprudencia moderna . . . la facultad de castigar inmediatamente . . . por un desacato directo es . . . y ha

sido aceptada como una facultad inherente de los tribunales."

En *Chula* v. *Superior Court*, 368 P.2d 107 (Cal. 1962), el Tribunal Supremo de California confirmó una condena de 10 días de cárcel contra un letrado por haber incurrido en desacato al no comparecer con su cliente ante el tribunal de instancia en la fecha fijada por éste para dictar la sentencia en un caso criminal. En este caso se siguió un procedimiento parecido al observado en el caso ante nos. El referido tribunal citó a *Lyons*, supra, en apoyo de su dictamen. Dijo dicho tribunal que la orden de adjudicación del desacato en este caso debe relacionar y relaciona los hechos constitutivos del desacato porque así lo dispone la Sec. 1211 del Código de Enjuiciamiento Civil. Esta disposición no fue incorporada al Código de Enjuiciamiento Civil de Puerto Rico. Dijo el Juez Traynor en su opinión disidente (por otros motivos) que la orden para mostrar causa dictada por el tribunal de instancia en este caso era un requisito indispensable del debido proceso de ley para dar oportunidad al letrado de conocer el cargo y prepararse para su defensa pues el tribunal no conocía, al no comparecer el letrado el día fijado para dictar sentencia, si dicho letrado tenía o no tenía una excusa válida que justificase su incomparecencia. *In Re Clawans*, 174 A.2d 367 (App. Div. N.J. 1961); *Lee* v. *Bauer*, 72 So.2d 792 (Fla. 1954); *People* v. *McDonnell*, 37 N.E.2d 159 (Ill. 1941); Annotation—*Attorney Court Attendance Contempt*, 97 A.L.R.2d 433. Véase, además, la monografía del profesor Dobbs titulada *Contempt of Court—A Survey*—, publicada en el Cornell L. Q., Vol. 56, No. 2, January 1971.

■ Reiteramos que los tribunales tienen poder inherente para condenar por desacato con el fin de hacer cumplir sus sentencias, órdenes y autos y conservar el orden en los procedimientos judiciales. Esta facultad, sin embargo, puede ser regulada y limitada por ley. La incomparecencia sin justa causa de un abogado en un litigio a una vista señalada por

el tribunal que entiende la causa y de cuya vista es notificado con razonable antelación, constituye un incumplimiento de una orden del tribunal y una indebida alteración del orden del procedimiento fijado por el tribunal para la causa. Tal conducta puede, por lo tanto, castigarse con multa o cárcel por constituir un desacato al tribunal.

Este tipo de desacato no es necesariamente de naturaleza criminal. Está provisto en las disposiciones vigentes del Código de Enjuiciamiento Civil en Puerto Rico. Como dicho cuerpo de ley no ha provisto como el de California del cual lo tomamos, disposiciones específicas sobre su procedimiento y las penalidades a imponerse, se hace necesario que se provea sobre estos particulares jurisprudencialmente. Como en cierto modo este tipo de desacato se asemeja al desacato criminal ya que va dirigido a la dignidad y autoridad del tribunal, creemos juicioso que su procedimiento se asemeje, hasta donde las circunstancias lo permitan y ameriten, al establecido por la ley de 1 de marzo de 1902.

■ Cuando se trata de un caso de desacato como el que nos ocupa, debe el tribunal dar al letrado, mediante orden para mostrar causa dentro de un término razonable, la oportunidad de conocer la falta que se le imputa, las circunstancias bajo las cuales, y el sitio y fecha en que la incurrió, y los hechos que la constituyen, de manera que tenga una oportunidad razonable de preparar su defensa.

■ En caso que el tribunal concluya que el letrado incurrió en el desacato imputado, la sentencia debe consignar el acto o actos constitutivos de dicho desacato así como la fecha y lugar de su comisión y las circunstancias de la misma.

Veamos ahora si el apelante incurrió en el desacato por el que se le penalizó y si se ha seguido en este caso el procedimiento arriba indicado.

Los hechos comprobados demuestran que el apelante era el abogado de los demandados Llovet y Otero en un caso de

*injunction;* que éstos fueron citados el día 27 de febrero de 1969 para comparecer ante el tribunal el día 17 de marzo de 1969 a mostrar causa porqué no debían ser castigados por desacato. Dicha citación fue notificada al apelante en 28 de febrero de 1969. No fue hasta el 14 de marzo cuando el demandado Llovet, según su testimonio en la vista del 17 de ese mes, al no poder conseguir al apelante ni ese día ni el día antes, tuvo que utilizar otro abogado quien le preparó la moción de suspensión pero no compareció a la vista. Podría deducirse de este testimonio y del testimonio del letrado Muñoz Padín que al no encontrar al apelante, Llovet recurrió al letrado Muñoz Padín y éste entonces hizo que el letrado Quiñones Velázquez le preparase la moción de suspensión.

Como bien indica el juez sentenciador, la moción de suspensión es desorientadora al extremo que informa que "no han podido comunicarse ni hacer arreglos con el Lic. Vicente Pérez Díaz [el apelante]." Esto tiende a confirmar el anterior testimonio de Llovet de que no logró comunicarse con el apelante ni el 13 ni el 14 de marzo de 1969. Es en la vista del desacato del apelante que Llovet se contradice y allí testifica que vio al apelante el viernes, éste le dijo que no podía asistir y lo refirió a donde el letrado Quiñones.

El testimonio del apelante no aduce justificación alguna para su incomparecencia el día 17 de marzo de 1969. No indica si hizo gestión alguna entre el día 28 de febrero cuando fue notificado del señalamiento de la vista del 17 de marzo de 1969 y el día 14 de marzo de 1969 que es cuando Llovet trata de localizarlo sobre la referida vista con el fin de gestionar su posposición. No tan solo no suscribe la moción de suspensión sino que no deja oportunamente constancia alguna en el récord de la razón por la que se le imposibilita comparecer a la vista del 17 de marzo de 1969. Por el contrario, la propia moción de suspensión que se radicó y el testimonio inicial de Llovet comprueba que el apelante simplemente hizo caso omiso de la notificación de señalamiento

de la referida vista, desatendió su obligación de actuar con respecto a la misma y que su omisión constituye un menosprecio de una orden del tribunal de instancia que resultó en una alteración improcedente del orden en los procedimientos en este caso establecido por dicho tribunal. Es a última hora, cuando ya no es posible realizar en el tribunal gestión alguna efectiva, que otro abogado, a petición del demandado Llovet, prepara la moción de suspensión y dice en ella que no ha podido comunicarse con el apelante. El testimonio del apelante en efecto, se limita a recurrir a la benevolencia del tribunal para que excuse su falta de cumplimiento para con su cliente y con el tribunal.

Bajo las anteriores circunstancias concluimos que el tribunal estuvo justificado en iniciar el procedimiento de desacato y, en vista de la prueba aducida, en declarar al apelante incurso en desacato imponiéndole como castigo una multa de $25. El tribunal tenía jurisdicción para dictar la orden para mostrar causa la cual cumple con los requisitos previamente indicados. Los otros apuntamientos del apelante carecen de mérito.

■ Ahora bien, como la sentencia no relaciona los datos que anteriormente hemos dicho que debe contener, *debe dejarse sin efecto y devolverse el caso al tribunal de instancia para que dicte otra en armonía con lo aquí resuelto. Cf. Pueblo v. Escalera,* 95 D.P.R. 148, 153 (1967).

El Juez Asociado Señor Hernández Matos no intervino. Los Jueces Asociados Señores Pérez Pimentel y Dávila concurren en el resultado.