Voto particular disidente emitido por el
Juez Asociado Señor Estrella Martínez, al cual se une el Juez Asociado Señor Rivera García.
Nuevamente, los maestros y las maestras del sistema de educación pública tienen que buscar la protección de este *402 Tribunal, en esta ocasión, debido a la actitud temeraria del Sistema de Retiro de Maestros de pretender imponer un interés de 9.5% para la acreditación de los servicios no cotizados, a pesar de que el articulado de la Ley Núm. 160-2013, que establecía ese menoscabo, fue declarado inconstitucional por este Tribunal. Paradójicamente, una Mayoría de este Tribunal deniega la protección reclamada por los peticionarios en su Moción sobre Incumplimiento de Sentencia, en lugar de encaminarla inmediatamente en el curso de acción que les otorga un remedio adecuado, completo y oportuno. En consecuencia, DISIENTO.
I
El trasfondo de la petición que hoy está ante la consideración de este Tribunal tiene su origen en la aprobación de la Ley Núm. 160-2013, conocida como la Ley de Retiro para Maestros del Estado Libre Asociado de Puerto Rico, que reformó el Sistema de Retiro de Maestros de Puerto Rico (SRM). Mediante la referida legislación se pretendía menoscabar sustancialmente las relaciones contractuales de los maestros y las maestras contratadas previas a esa legislación, sin auscultar medidas menos onerosas y con el alegado propósito de garantizar la solvencia del SRM.
Como consecuencia, los maestros y las maestras acudieron al Tribunal de Primera Instancia mediante una Demanda sobre Injunction Preliminar y Permanente y Solicitud de Sentencia Declaratoria, en la cual solicitaron la paralización de la implantación de la Ley Núm. 160-2013 y que se declarara nula e inconstitucional. Posteriormente, solicitaron a este Tribunal una certificación intrajurisdiccional, la cual fue acogida.
Luego de los procesos de rigor, el 11 de abril de 2014, este Tribunal determinó que la Ley Núm. 160-2013 es inconstitucional, ya que se aprobó sin un análisis adecuado y menoscabó sustancialmente las obligaciones contractuales *403 del Estado Libre Asociado de Puerto Rico (ELA), sin que con ello se alcanzaran los objetivos por los cuales fue aprobada. Ante ello, determinamos expresamente que los Arts. 3.6, 3.9, 3.11, 4.3(a), 4.4, 4.6(a)(b)(c) y 5.1 a 5.5 de la Ley Núm. 160-2013 “son inconstitucionales en la medida que menoscaban sustancialmente y de forma irrazonable el derecho contractual que tienen los peticionarios demandantes en cuanto a su plan de retiro [...]”. (Enfasis suprimido). AMPR et als. v. Sist. Retiro Maestros V, 190 DPR 854, 880 (2014). En lo pertinente, ello incluyó declarar inconstitucional el acápite de la ley relacionada con la acreditación de servicios no cotizados que incluía el requerir a un participante del SRM el pago de las aportaciones correspondientes para acreditar estos servicios a un interés compuesto anual de 9.5%. La decisión de este Tribunal es final y firme.
Entretanto, la Junta de Síndicos del SRM aprobó el 28 de febrero de 2014 la Resolución 2014-001 mediante la cual aumentó el interés a cobrarse por servicios acreditables de un 2% a un 9.5%. Como consecuencia de ello, y ante la clara determinación de este Tribunal, los peticionarios acudieron nuevamente al Poder Judicial mediante Demanda de Sentencia Declaratoria e Injunction Preliminar y Permanente. En esa ocasión, cuestionaron la legalidad de la Resolución 2014-001 al sostener que esta no fue aprobada por la mayoría de los presentes conforme requiere el Art. 2.5 de la Ley 160-2013 (18 LPRA sec. 394d).
El Tribunal de Primera Instancia desestimó la acción presentada por los maestros y maestras, por lo que estos acudieron al Tribunal de Apelaciones.(1) El foro apelativo intermedio emitió una sentencia el 19 de diciembre de 2014 mediante la cual revocó al Tribunal de Primera Instancia y dejó sin efecto la Resolución 2014-001 de la Junta de Síndicos de la SRM. Ello, al concluir que la referida resolución no fue aprobada por la mayoría de los presentes *404 conforme dispone la ley aplicable. La sentencia del Tribunal de Apelaciones advino final y firme.
Como corolario, los peticionarios gozan con dos dictámenes que favorecen su reclamo en cuanto a que no procede que el SRM cobre un interés compuesto al 9.5% para acreditar los servicios no cotizados. Sin embargo, sostienen que el SRM pretende cobrar el 9.5% de interés compuesto anual para que un maestro o una maestra logre la acreditación de los servicios no cotizados haciendo referencia a las disposiciones de la Ley Núm. 160-2013 que fueron declaradas inconstitucionales por este Tribunal. En atención a esto, acuden a este Tribunal mediante Moción sobre Incumplimiento de Sentencia y sostienen que el SRM rehúsa de manera obstinada y contumaz acatar las determinaciones de los foros judiciales al requerir que la tasa aplicable al tiempo de servicio no cotizado es de 9.5% en virtud del Art. 3.6(b)(3) de la Ley Núm. 160-2013. Ello, a pesar de que este fue declarado inconstitucional en AMPR et ais. v. Sist. Retiro Maestros V, supra. De esta forma, nos suplican que encontremos incurso en desacato al SRM y al ELA por no acatar la determinación judicial y no honrar la tasa vigente antes de la Ley Núm. 160-2013.(2)
Por su parte, el SRM y el ELA se oponen a lo solicitado, al cuestionar la jurisdicción de este Tribunal para hacer cumplir su dictamen.
II
Sabido es que los tribunales gozamos de la potestad para proteger y hacer cumplir nuestras sentencias y para castigar la desobediencia, o resistencia contumaz a nuestras órdenes y decretos. Ese poder resulta indispensable para la adecuada y ordenada administración de la justicia y la protección de los derechos de la ciudadanía. Véanse: *405 ELA v. Asoc. de Auditores, 147 DPR 669 (1999); Pueblo v. Pérez Díaz, 99 DPR 788, 801 (1971).
Como consecuencia, no debería cuestionarse la facultad o poder de cualquier tribunal para hacer cumplir su sentencia. Máxime cuando nuestro Sistema Judicial es uno unificado en cuanto a lo que concierne a la jurisdicción. Art. V, Sec. 2, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 412. Por lo tanto, cualquier parte del Sistema Judicial tiene la facultad para resolver una causa y mucho más para hacer cumplir sus dictámenes. Véanse: Voto particular del Juez Asociado Señor Estrella Martínez en Alvarado Pacheco y otros v. ELA, 188 DPR 594 (2013); Vives Vázquez v. E.L.A., 142 DPR 117, 135 (1996). Sin embargo, ello no es óbice para que, en la sana administración de los procesos, exista una competencia definida entre los distintos tribunales y salas que integran el Tribunal General de Justicia. Cosme v. Hogar Crea, 159 DPR 1, 7 (2003).
El Art. V, Sec. 2 de la Constitución de Puerto Rico, delega en la Asamblea Legislativa el poder para crear y suprimir tribunales, con excepción del Tribunal Supremo. Const. PR, LPRA, Tomo 1, ed. 2008, pág. 412. A su vez, esta sección confiere a la Asamblea Legislativa la facultad para determinar la competencia y organización del Tribunal General de Justicia.
En consecuencia, el ejercicio de este poder, por parte de la Asamblea Legislativa, queda sujeto a dos condiciones de umbral. En primer lugar, esa Rama no puede afectar la jurisdicción de los tribunales; sólo puede incidir sobre su competencia y organización. En segundo plano, la Rama Legislativa no puede emitir ley alguna que contravenga el Art. V, Sección 3 de la Constitución, el cual provee que el Tribunal Supremo de Puerto Rico es el Tribunal “de última instancia en Puerto Rico”. (Énfasis suplido). Art. V, Sec. 3, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 412. Véase, también, Petrovich v. Srio. de Hacienda, 79 DPR 250, 260 (1956). *406 Sabido es que el término jurisdicción significa “el poder o autoridad de un tribunal para considerar y decidir casos o controversias”. Rodríguez v. Registrador, 75 DPR 712, 716 (1953). La Constitución de Puerto Rico estableció que “[l]os tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción [...]”. Art. V, Sec. 2, supra. Ello implica que en Puerto Rico, “cualquier parte del Sistema Judicial tiene la facultad para resolver una causa”. (Énfasis suplido). Vives Vázquez v. ELA, supra, pág. 135. Véase, también, J. Trías Monge, El sistema judicial de Puerto Rico, San Juan, EDUPR, 1978, pág. 136.
Ahora bien, lo anterior es diferente al concepto competencia. El término competencia implica la distribución del “trabajo judicial entre los distintos tribunales y salas que integran el Tribunal General de Justicia”. Cosme v. Hogar Crea, 159 DPR 1, 7 (2003). En el caso particular del Tribunal Supremo, la Constitución le otorga competencia en primera instancia sobre autos de “habeas corpus”y le reserva una “competencia en última instancia” sobre toda controversia judicial. Asimismo, la Ley de la Judicatura y las Reglas de Procedimiento Civil, entre otras leyes especiales, le confieren al Tribunal Supremo competencia sobre ciertos recursos y casos en nuestro ordenamiento legal.
Por eso reitero que aunque ciertamente la Asamblea Legislativa puede afectar la competencia legislativamente conferida a los distintos componentes del Tribunal General de Justicia, esta no tiene poder constitucional para limitar la jurisdicción del Tribunal General de Justicia, ni para afectar la “competencia en última instancia constitucionalmente reconocida al Tribunal Supremo de Puerto Rico”.
Concretamente, cuando se trata del Tribunal Supremo, el Art. V, Sec. 3 de la Constitución de Puerto Rico, supra, limita esa facultad de la Rama Legislativa. Ello, pues la Constitución expresamente dispone que el Tribunal Supremo es el Tribunal de última instancia en Puerto Rico. Consecuentemente, el Tribunal Supremo siempre tendrá la *407 discreción de ejercer oportunamente su competencia final sobre cada caso que se presente en los Tribunales de Puerto Rico. Véase Voto particular del Juez Asociado Señor Estrella Martínez en Alvarado Pacheco y otros v. ELA, supra, págs. 651-653.
Ante ese cuadro, contamos con el mecanismo para atender cualquier asunto pendiente ante el Poder Judicial, al igual que, ya sea motu proprio o a solicitud de parte, el poder de traer inmediatamente ante nuestra consideración cualquier asunto ante el Tribunal de Primera Instancia o el Tribunal de Apelaciones. Claro está, ese ejercicio de discreción debe ser utilizado en circunstancias que ameriten considerar cualquier cuestión novel de derecho o de alto interés público que incluya cualquier cuestión constitucional sustancial, la constitucionalidad de una ley, una resolución conjunta, una resolución concurrente, una una regla o un reglamento. Véanse: Brau, Linares v. ELA et als., 189 DPR 1068, 1073-1074 (2013); Alvarado Pacheco y otros v. ELA, supra.
H-1 HH 1-4
En el caso de autos, el hecho de que el tribunal de mayor jerarquía haya emitido un mandato sobre el asunto que estaba pendiente ante su consideración no puede ser un estorbo al poder de este Tribunal para hacer cumplir nuestro dictamen sobre una controversia que fue considerada mediante un recurso de certificación intrajurisdiccional. Por supuesto, ello tampoco debe conllevar la obligación automática de que atendamos cada solicitud de cumplimiento de cualquiera de los dictámenes emitidos por este Tribunal. La sana administración de la justicia así lo dicta. Esencialmente, porque no podemos olvidar que nada nos impide certificar cualquier asunto ante el Tribunal de Primera Instancia o el Tribunal de Apelaciones en aquellos casos en los que se puedan menoscabar los derechos de las *408 partes. Tal facultad responde a nuestra responsabilidad constitucional de impartir justicia mediante consideración oportuna de los reclamos de interés público, salvaguardar remedios justos y adecuados, y la política pública de fomentar el acceso a la justicia.
Tras evaluar el reclamo de los educadores, concibo que este se fundamenta en dos hechos incuestionables. El primero de ellos, la determinación de inconstitucionalidad del Art. 3.6 de la Ley Núm. 160-2013 para cierto grupo de maestros y maestras, y el segundo, la determinación del Tribunal de Apelaciones en cuanto a la nulidad de la Resolución 2014-001 de la Junta de Síndicos del SRM. Como consecuencia, sostienen que el requerimiento de pago del interés de 9.5% de la Junta de Síndicos del SRM contraviene las decisiones de ambos foros judiciales, por lo que solicitan que se les encuentre incurso en desacato.
Dadas estas circunstancias particulares y mediando un dictamen previo de este Tribunal considero que procedía, dentro de nuestro sistema unificado de justicia, remitir directamente el asunto al foro de primera instancia para los trámites correspondientes del proceso de desacato que solicita la parte peticionaria. De tal forma, facilitamos el acceso a los tribunales y el manejo del proceso garantizando la solución justa, rápida y económica de todo procedimiento. Regla 1 de Procedimiento Civil de 2009 (32 LPRAAp. V).
> H-1
De acuerdo con lo expuesto, hubiera remitido directamente el asunto al Tribunal de Primera Instancia para el trámite correspondiente y no declinar la petición de los educadores y educadoras de nuestro sistema de educación pública.

 Véase Educadores /as por la Democracia y otros v. Sistema de Retiro para los Maestros de Puerto Rico, KLAN201401222.

 Previo a la aprobación de la Ley Núm. 160-2013, el interés que la Junta de Síndicos del SRM había determinado cobrar era de un 2%.