EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISMAEL CUEVAS VELÁZQUEZ, acusado y apelante.

*Número:* CR-74-53      *Resuelto:* 29 de enero de 1975

*Ismael Cuevas Velázquez,* por derecho propio, y *Héctor Lugo Bougal,* abogados del acusado; *Myriam Naveira de Rodón, Procuradora General* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Contra la sentencia por desacato sumario de diez días de cárcel impuéstale por el Tribunal Superior, Sala de San Juan, el apelante— abogado defensor de un ciudadano en un juicio criminal—alega y discute como único error lo siguiente:

"Cometió grave error de derecho el Tribunal a quo al condenar al abogado acusado cuando éste no incurrió en actuación impropia alguna, sino que ejercitó, en favor de su defendido, el derecho que la ley y la jurisprudencia concede a un acusado, por vía de su defensor, de llevar al récord del caso cualquier actuación del Juez que pueda lesionar el derecho del acusado a un juicio justo e imparcial."

Hemos examinado detenidamente el récord y los alegatos sometidos y concluimos que el error no fue cometido. El incidente que generó la sanción impugnada se desarrolló durante la etapa de la desinsaculación del jurado del siguiente modo:

"LIC. CUEVAS VELÁZQUEZ:

(Hace la siguiente pregunta al panel)

P. ¿Alguno de ustedes pertenece al Club de Rotarios? ¿Alguno de ustedes pertenece al Club de Leones?

HON. FISCAL:

Tenemos reparo a eso, aquí no hay perjudicado ningún león o rotario que yo sepa, o algo así.

HON. JUEZ:

¿Cuál es la materialidad?

LIC. CUEVAS VELÁZQUEZ:

Nosotros entendemos que en nuestra función de hacer un estudio del Jurado, está el investigar su vida privada, investigar a qué organización pertenece, qué agrupación cívica pertenece. Son potenciales miembros del Jurado.

HON. JUEZ:

Sí, pero si tiene alguna relación con el caso sí, pero si no. . . . .

LIC. CUEVAS VELÁZQUEZ:

Claro.

HON. JUEZ:

Pues diga.

LIC. CUEVAS VELÁZQUEZ:

Claro que tiene, la forma de pensar de la persona se determina por la agrupación a que pertenece y eso le da un guía al abogado para determinar con qué personas se reúne. Si son personas liberales, si son personas conservadoras. Entendemos que es una cuestión decidida.

HON. JUEZ:

Vamos a permitirlo. Adelante.

LIC. CUEVAS VELÁZQUEZ:

Vamos a objetar *cualquier clase de gestos o señales,* porque este es un caso. . . . . .

HON. JUEZ:

Perdón. *¿A quién le está imputando señales el colega?*

LIC. CUEVAS VELÁZQUES:

*A Vuestro Honor.*

HON. JUEZ:

Pues baje para el récord y bien claro. Me lo baja para el récord.

LIC. CUEVAS VELÁZQUEZ:

Pues las voy a decir.

HON. JUEZ:

Sí, vamos a ver qué gestos y qué señales ha hecho este Juez.

LIC. CUEVAS VELÁZQUEZ:

*No, Señor Juez, sin que le de coraje.*

HON. JUEZ:

No tengo coraje. El colega está haciendo una imputación. Yo estoy ante la imputación del colega. Si es una seña, señale a quién le estoy haciendo seña.

LIC. CUEVAS VELÁZQUEZ:

Es una sonrisa ante nuestra posición. A pesar de que el Honorable Tribunal nos sostiene hace una sonrisa, que ante un Jurado esa sonrisa, Vuestro Honor, para mi entender hace una insinuación.

HON. JUEZ:

Bien, magnífico.

LIC. CUEVAS VELÁZQUEZ:

*Nosotros entendemos que dentro de la función de un Tribunal está el no hacer gestos que puedan llevar un mensaje al Jurado.* No hacemos imputación.

HON. JUEZ:

¿Porque me sonrío ante el planteamiento? ¿Eso fue un gesto y una seña? Ahora yo quiero que me señale la seña a quién fue.

LIC. CUEVAS VELÁZQUEZ:

Puede ser un gesto involuntario de Su Señoría, pero sí el Honorable Juez dijo en una forma muy bajita, 'se permite' y se sonrió y meneó la cabeza. Eso para nosotros, Vuestro Honor, no cae dentro de los procedimientos de un Tribunal.

HON. JUEZ:

Bien, magnífico. Diga cuál es la seña.

LIC. CUEVAS VELÁZQUEZ:

No tenemos una cámara de televisión que pueda coger los gestos de Vuestro Honor, pero sí llamamos la atención porque estamos aquí para defender a nuestro defendido.

HON. JUEZ:

Sin imputaciones viciosas, dígame a quién le hice una seña y yo quiero oir eso para récord bien claro. A quién yo le hice una seña y cuál fue la seña.

LIC. CUEVAS VELÁZQUEZ:

Vuestro Honor, *fue un gesto general.*

HON. JUEZ:

*¿El colega se retracta en la imputación que le hizo al Tribunal de que le hizo una seña a alguien?*

LIC. CUEVAS VELÁZQUEZ:

*Puede ser o una seña o puede ser un gesto,* pero Vuestro Honor se sonrió en una forma no muy normal y meneó la cabeza en esta forma . . . sonreído. Nosotros estamos aquí para. . . . .

HON. JUEZ:

*No para hacer imputaciones viciosas.* Yo quiero que me. . . .

LIC. CUEVAS VELÁZQUEZ:

*Siempre que tengamos que hacerla, la vamos a hacer.*

HON. JUEZ:

Dígame la seña y baje para el récord.

LIC. CUEVAS VELÁZQUEZ:

*Usted meneó la cabeza, se sonrió y bajó la cabeza sonreído. No me gusta la actuación.*

HON. JUEZ:

El Jurado hágame . . . Marshal, hágame el favor y retire al Jurado.

Por cuanto el señor Abogado aquí presente le ha hecho una insinuación e imputación al Tribunal que no puede sostener las mismas.

Por cuanto el Tribunal entiende que eso ha sido una falta de respeto y atenta contra la dignidad de este Tribunal, lo que constituye un desacato en corte abierta.

Por lo tanto el Tribunal le impone diez días de cárcel.

Se decreta un mistrial por imputaciones y conducta impropia del abogado de defensa y se disuelve el Jurado.

Transcríbase este incidente y se refiere al Tribunal Supremo de Puerto Rico.

Marshal, hágase cargo del convicto abogado y se decreta un mistrial por conducta impropia del abogado." (T.E. págs. 1–7.) Bastardillas nuestras.

La ley de 1ro. de marzo de 1902, según enmendada (33 L.P.R.A. sec. 517) reconoce legislativamente lo que por derecho propio y atributo inherente posee el Poder Judicial, a saber, la facultad de sancionar por desacato a toda persona culpable de "perturbación del orden, ruido u otro disturbio, tendente a interrumpir sus procedimientos, o conducta desordenada, desdeñosa e insolente hacia un tribunal o juez . . . en

presencia de dicho tribunal . . . ." *De Torres* v. *Corte*, 58 D.P.R. 515 (1941).

Bajo las circunstancias que demuestran la transcripción previamente reproducida no podemos convenir con la tesis de que el apelante no incurrió en conducta desdeñosa e insolente hacia el tribunal de instancia conforme la figura tipificada en la citada ley.[1] El fundamento de que su actuación fue motivada por un deseo de descargar adecuadamente el deber de representar eficazmente su cliente no tiene apoyo en la prueba, que indubitadamente demuestra que éste no observó el debido respeto a que son acreedores los tribunales, en particular por parte de los miembros de la profesión de abogado. Canon 9 de Etica Profesional (4 L.P.R.A. Ap. IX, C. 9, Sup. Acum. 1974, pág. 286).

■ El comportamiento judicial o cualquier anormalidad en un juicio con el cual un abogado no esté conforme en su incomprometible gestión de defender los intereses de su representado, puede llevarse a récord para la acción correctiva ulterior sin que se recurra al insulto y agravio de la figura del magistrado, máxime en circunstancias como las de autos, en que están envueltas expresiones faciales—conscientes o inconscientes—de un juez que preside un proceso ante jurado.

■ Al apelante imputarle al juez de instancia que estaba haciendo señas al jurado y reiterar en tres ocasiones la misma —desatendiendo la oportunidad que se le ofreció en el momento de rectificar su grave falta—traspasó el ámbito de protección que se le confiere a todo abogado en la defensa de los acusados haciéndose culpable de violentar la norma jurídica consagrada en el estatuto penal. *Pueblo* v. *Susoni*, 81 D.P.R. 124 (1959). Su conducta, cesó de ser *bona fide* y lesionó y paralizó el proceso judicial que se desarrollaba

---

[1] De rigor es consignar que el nuevo Código Penal, aprobado en virtud de la Ley Núm. 115 del 22 de julio de 1974 y que entró en vigor recientemente, en el inciso 1 del Art. 235 establece la modalidad bajo la cual el acusado fue convicto.

moviendo al tribunal a disolver prematuramente el jurado. Debe tenerse presente que el principio medular protegido por la disposición no es sólo el de vindicar la autoridad judicial —representada por el tribunal como institución y personificada en la figura del juez—sino prevenir la indebida interferencia e interrupción de la buena marcha de la justicia.

Coincidir con el apelante constituiría el asestarle una herida mortal al ordenado proceso que debe caracterizar e imperar en los tribunales los cuales constituyen el sitial y baluarte sagrado que nuestro pueblo ha reconocido para dirimir sin agravios y desapasionamientos las controversias humanas. Ausente este respeto, la sala de justicia quedaría reducida a un foro de anarquía en que la solución de conflictos sería el producto de la pasión y no de la razón. *Coll Moya* v. *Alcaide, Cárcel Municipal,* 89 D.P.R. 225 (1963).

No se cometió el error apuntado. Sin embargo, por entender este Tribunal que la pena de cárcel por diez (10) días no guarda proporción con el carácter del delito cometido, *se modifica la pena impuesta sustituyéndola por multa de $200.00. Así modificada, se confirma.*

El Juez Presidente, Señor José Trías Monge, disintió en opinión separada. El Juez Asociado, Señor Irizarry Yunqué, no intervino.

—O—

Opinión disidente emitida por el Juez Presidente, Señor Trías Monge.

San Juan, Puerto Rico, a 29 de enero de 1975

Disiento respetuosamente del sentir mayoritario.

Nuestros tribunales poseen ciertamente la facultad de castigar por desacato a toda persona culpable de "Perturbación del orden, ruido u otro disturbio, tendente a interrumpir sus procedimientos, o conducta desordenada, desdeñosa o insolente hacia un tribunal o juez . . . en presencia de dicho

tribunal . . . ." Sec. 1, Ley de 1 de marzo de 1902, según enmendada, 33 L.P.R.A. sec. 517(1); *vide*: la Regla 242(a) de las de Procedimiento Criminal; *Pueblo* v. *Pérez Díaz*, 99 D.P.R. 788 (1971). Este poder es tan abarcador como indispensable para mantener el debido orden y decoro en los procedimientos judiciales y el respeto que debe observarse hacia todo magistrado. Su extensión no alcanza a invadir, sin embargo, la obligación del abogado de representar adecuadamente a su cliente. Adviértase en este sentido lo dispuesto en los Cánones de Etica Profesional números 1 y 9, 4 L.P.R.A. Ap. IX, Cs. 1 y 9. No es fácil delimitar los campos en diversas situaciones en que la referida potestad del juez choca con la mencionada obligación del letrado, especialmente si se recuerda que ésta es también particularmente lata. En *Reyes Delgado* v. *Corte*, 41 D.P.R. 902, 906–907 (1930) por ejemplo, determinamos que no constituían desacato las instrucciones que un abogado le impartió a su cliente, para protegerlo a su juicio contra una posible autoincriminación, de desobedecer la orden de un juez.

La tendencia más reciente en la interpretación del poder de desacato ha sido la de contraerlo en aquellos casos en que se estime que la acción del abogado se debió al esfuerzo *bona fide* de representar bien a su cliente. 3 Wright and Miller, *Federal Practice and Procedure: Criminal* 153; *Parmelee Transportation Co.* v. *Keeshin*, 292 F.2d 806 (7th Cir. 1961); *In re Hallinan*, 459 P.2d 255 (Calif. 1969). La propia magnitud del poder invita en ocasiones a utilizarlo precavidamente. *Sacher* v. *United States*, 343 U.S. 1 (1952).

En el caso presente, la conducta del apelante no revela la existencia de un plan consciente de hostigar el tribunal o interrumpir sus labores. Dobbs, *Contempt of Court: a Survey*, 56 Cornell L. Rev. 183, 188, 204 *et seq.* (1971). Tiende a mostrar más bien el esfuerzo de buena fe del abogado de representar su cliente, en tentativa aparente de sentar las bases para invocar el principio establecido en *Pueblo* v.

*León,* 53 D.P.R. 429, 440 (1938), *Pueblo* v. *Díaz,* 74 D.P.R. 375, 394 (1953), y otros casos respecto a la conducta del juez frente al jurado. No surge del récord evidencia de mala fe.

En tales circunstancias considero improcedente la condena por desacato.