EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Segismundo López Montalvo | 2008 TSPR 42<br><br>173 DPR \_\_\_\_ |

Número del Caso: CP-2005-18

Fecha: 26 de febrero de 2008

Oficina del Procurador General:

> Lcda. Sylvia Roger Stefani
> Procuradora General Auxiliar
>
> Lcdo. Salvador J. Antonetti Stutts
> Procurador General

Abogados de la Parte Querellada:

> Lcdo. Luis A. Muñiz Campos
> Lcdo. Harry N. Padilla Martínez

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Segismundo López Montalvo        CP-2005-18

*PER CURIAM*

En San Juan, Puerto Rico, a 26 de febrero de 2008.

Como consecuencia de la sentencia emitida por este Tribunal en el caso de <u>Víctor Souffront Cordero, et. al. v. Autoridad de Acueductos y Alcantarillados, et al</u>, 2005 T.S.P.R. 49, 163 D.P.R. ___ (2005), Op. de 21 de abril de 2005, el Procurador General presentó la querella que nos ocupa. En ésta, le imputó al Lcdo. Segismundo López Montalvo dos cargos por violación a los cánones 9 y 12 de Ética Profesional, 4 L.P.R.A. Ap. 1X, C. 9, 12. Los hechos alegadamente violatorios de las normas éticas cuya comisión se le imputa al Lcdo. López Montalvo surgen de

su conducta como abogado de la parte demandante en la etapa apelativa del caso antes mencionado, según explicamos a continuación.

I

La demanda en daños y perjuicios que dio comienzo al caso de Víctor Suffront Cordero, et al. v. Autoridad de Acueductos y Alcantarillados, et al., supra, se presentó en el Tribunal de Primera Instancia, Sala Superior de Mayagüez. El Lcdo. López Montalvo, como hemos dicho, representaba a la parte demandante. El 31 de octubre de 2003, el foro de instancia declaró con lugar una moción de sentencia sumaria presentada por la co-demandada, ACE Insurance, Co., ("ACE") y desestimó el pleito por insuficiencia de prueba. La sentencia fue archivada en autos y notificada a la partes el 8 de diciembre de 2003.

El 8 de enero de 2004 (31 días después de archivada en autos y notificada la sentencia) los demandantes presentaron ante el Tribunal de Apelaciones su recurso de apelación. Para acreditar la jurisdicción de dicho foro, indicaron que la sentencia les fue notificada el 9 de diciembre de 2003 e incluyeron en su apéndice la copia de un sobre con un sello de $0.49 y matasellos del 9 de diciembre de 2003. Según alegaron, éste fue el sobre utilizado por el foro de instancia para notificarles la sentencia.

Por su parte, la apelada, ACE, solicitó la desestimación del recurso, alegando la falta de jurisdicción del tribunal apelativo y señalando que el sobre presentado por los demandantes no correspondía al sobre en que se envió la sentencia. A su vez, presentó copias de los sobres en que ACE y la otra co-demandada, Autoridad de Acueductos y Alcantarillados ("AAA"), recibieron sus copias de la sentencia. La fecha de envío por correo de ambos sobres era el 8 de diciembre de 2003. Además, ambos sobres tenían dos sellos cada uno, uno de $0.49 y otro de $0.57, para un total de franqueo de $1.06. Los sellos adheridos a cada uno de los sobres enviados a los co-demandados seguían una secuencia numérica, lo cual indicaba que se habían enviado de forma simultánea. ACE también sometió copia de la página de "teletribunales" que reflejaba que la sentencia apelada se había notificado el 8 de diciembre de 2003.

El 25 de marzo de 2004, el Tribunal de Apelaciones revocó la sentencia del Tribunal de Primera Instancia, pero no resolvió nada en cuanto al planteamiento jurisdiccional. Habiéndose presentado una moción de reconsideración, el Tribunal de Apelaciones le concedió a los apelantes un término para expresarse. Estos comparecieron, representados por el Lcdo. López Montalvo, para reiterar que la sentencia del Tribunal de Primera Instancia no se les notificó el 8 de diciembre de 2003,

como a las otras partes en el pleito, sino el 9 de ese mismo mes.

El Tribunal de Apelaciones denegó la reconsideración y ACE acudió ante nosotros mediante recurso de *certiorari*. Incluyó en el apéndice de su escrito una certificación oficial de la Secretaria Regional del Tribunal de Primera Instancia, Sala Superior de Mayagüez, certificando que la sentencia dictada "fue notificada y depositada en el correo el 8 de diciembre de 2003"; y que, el registro de "Notificación de sentencias y resoluciones enviadas al correo fuera de fecha" no reflejaba anotación alguna que indicara que se hubiera hecho alguna notificación en fecha distinta a la de archivo en autos.

Ordenamos a la parte recurrida mostrar causa por la cual no debía expedirse el recurso y revocarse la determinación del Tribunal de Apelaciones. Los recurridos, nuevamente representados por el Lcdo. López Montalvo, comparecieron y argumentaron que no debíamos tomar en consideración la certificación emitida por la Secretaria Regional de Mayagüez porque ese documento no se había presentado ante el Tribunal de Apelaciones y no estaba incluido en el expediente del caso. Señalaron, además, que la "alegada certificación" no excluía la posibilidad de error humano y solicitaron que se tomara conocimiento judicial "de las correspondencias mal

manejadas, colocadas en lugares equivocados y extraviadas que ocurren diariamente en el correo postal".

El 21 de abril de 2005, mediante Opinión *Per Curiam*, expedimos el recurso de *certiorari* y revocamos la sentencia del Tribunal de Apelaciones. Expusimos en nuestra Opinión que la actitud del Lcdo. López Montalvo, al tratar de evitar que este Tribunal considerara la certificación de la Secretaria Regional del Tribunal de Primera Instancia de Mayagüez, "pone de manifiesto un trámite amañado para confeccionar artificialmente la jurisdicción del foro apelativo" (página 16, sentencia de 21 de abril de 2005) y era "altamente preocupante". Por eso, ordenamos referir la conducta desplegada por el Lcdo. López Montalvo al Procurador General.

El Procurador General presentó la querella el 22 de agosto de 2005. El Lcdo. López Montalvo respondió el 1 de diciembre de 2005 y adujo que "los hechos que surgen de la opinión de este Honorable Tribunal a lo más que dan lugar es a concluir que el aquí compareciente incurrió en un error lamentable al utilizar de manera equivocada un sobre para acreditar la jurisdicción del foro apelativo". El 8 de enero de 2005, nombramos al Lcdo. Víctor Rivera González como Comisionado Especial. Celebrada la vista y recibida la prueba, el Comisionado rindió su Informe el 28 de agosto de 2007.

Durante el trámite de la querella, el querellado no controvirtió los hechos que hemos reseñado. Más bien, en todos sus escritos y en la vista evidenciaria se limitó a cuestionar que sus actos tuvieran la intención de inducir a error al Tribunal de Apelaciones respecto a su jurisdicción. Según el querellado, el Procurador no llevó a cabo investigación de hechos alguna antes de presentar la querella sino que se limitó a citar nuestras expresiones Víctor Souffront Cordero, et al. v. Autoridad de Acueductos y Alcantarrillados, et al., *supra*. Arguye el querellado que ello no es suficiente para concluir que el sobre presentado efectivamente se sometió con ese propósito o que fuera objeto de alteración o uso indebido.

El Procurador General no presentó prueba testifical durante la vista y su prueba documental consistió básicamente de los expedientes del caso de Víctor Suffront Cordero, et al. v. Autoridad de Acueductos y Alcantarrillados, et al., *supra*, ante los foros de instancia, apelativo y el Tribunal Supremo.

Además de su propio testimonio, el querellado ofreció el testimonio de tres abogados que se expresaron sobre la conducta y desempeño personal y profesional de éste. El querellado testificó que para la fecha de los hechos laboraban en su bufete tres abogados y tres secretarias, dos de éstas a tiempo parcial. Las

notificaciones se recibían por las secretarias, quienes tenían una directriz de engrapar el sobre de la notificación al expediente. Expuso que no manejó personalmente el sobre ni la sentencia enviados por el Tribunal de Primera Instancia. Indicó, además que en su oficina no había, para la fecha de los hechos, un registro de notificaciones recibidas, aunque se implantó uno después de lo ocurrido. Aceptó el querellado que nunca se fijó en el franqueo requerido para el envío de una sentencia de catorce páginas.

Según el Comisionado Especial el querellado aceptó su negligencia, "no así que su actuación haya ido intencionalmente dirigida a tratar de crear jurisdicción artificialmente, constándole que no la había". En su Informe el Comisionado determina, como cuestión de hecho, que el licenciado López Montalvo "fue negligente en la supervisión del manejo de la correspondencia" y que se probó la infracción a los cánones 9 y 12 de ética profesional, "en función de la negligencia del abogado tal como aceptada por éste en su testimonio y evidenciada por la contundente prueba documental". El Comisionado nos recomienda que limitemos la sanción disciplinaria correspondiente a una amonestación o censura, en función de que el licenciado López Montalvo goza de buena reputación en la profesión legal y ésta es la primera querella que se le radica.

II

Al querellado se le imputa haber violado los Cánones 9 y 12 de de Ética Profesional, 4 L.P.R.A. Ap. IX, C.9, 12., En lo aquí pertinente estos proveen lo siguiente:

Canon 9:

> El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

Canon 12:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustánciales de su cliente.

Los abogados son una parte esencial del proceso de impartir justicia y como tal tienen la ineludible encomienda de desempeñar su labor con la mayor diligencia, responsabilidad e integridad. In re: Rodado Nieves, 2003 T.S.P.R. 125, (Op. de 30 de junio de 2003); In re: Ortiz Velázquez, 145 D.P.R. 308 (1998); In re: Córdova González, 135 D.P.R. 260 (1994). En reiteradas ocasiones hemos hecho hincapié en que el Canon 12 de Ética Profesional, 4

L.P.R.A. Ap. IX, C.12, le impone a los abogados y abogadas la obligación  de ser diligentes y responsables en la tramitación de los casos que le son encomendados, evitando entorpecer la resolución de los mismos.

El abogado está llamado a cumplir la obligación que el Canon 12 impone en todas las etapas de un litigio. In re: Collazo Maldonado, 2003 T.S.P.R. 76, (Op. de 3 de abril de 2003); In re: Soto Colón, 2001 T.S.P.R. 166, (Op. de 9 de noviembre de 2001); In re: Ayala Torres, 2000 T.S.P.R. 44, (Op. Per Curiam de 14 de febrero de 2000); In re: Pagán Hernández, 141 D.P.R. 113 (1996); In re: Arroyo Villamil, 113 D.P.R. 568 (1982); Heftler Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846 (1975).

En cuanto al Canon 9, hemos expresado que la práctica de la abogacía exige hacia los tribunales constante respeto. In re: Iván L. Pagán, 116 D.P.R. 107, 111 (1985). Esta actitud de respeto no se limita al comportamiento y lenguaje utilizado durante los procesos o en los escritos judiciales. Es más bien la responsabilidad que tiene todo abogado o abogada de asumir un compromiso de vigilancia constante por la calidad de la justicia que se imparte en los tribunales y de actuar para asegurar el buen orden en la administración de la justicia.  Esta obligación, según hemos explicado en incontables ocasiones trasciende la relación puramente privada entre el abogado y el cliente. Lluch v. España Service Sta., 117 D.P.R. 729 (1988).

El querellado acepta que los hechos incontrovertidos expuestos en nuestra opinión en <u>Víctor Suffront Cordero, et al. v. Autoridad de Acueductos y Alcantarillados, et al.</u>, <u>supra</u>, son suficientes para sostener que él fue negligente al utilizar un sobre equivocado para acreditar la jurisdicción del foro apelativo. Aduce, sin embargo, que no se ha probado que su actuación fuera intencional y que para sostener el ejercicio de nuestra facultad disciplinaria es necesario demostrar que la conducta no fue meramente negligente sino que hubo intención de actuar contrario a lo que requieren los cánones de ética profesional. No tiene razón.

En <u>Martínez v. Abijoe Realty</u>, 151 D.P.R. 1 (2000), establecimos que cuando la fecha del archivo en autos del dictamen judicial y la de la notificación postal no coinciden, la mejor práctica para acreditar la jurisdicción del foro apelativo es que el apelante o peticionario incluya en el apéndice al recurso, además de la copia del volante del archivo en autos de la notificación de la sentencia, una copia del sobre del Tribunal en el que se recibió la notificación. El matasellos del correo deberá reflejar claramente la discrepancia en las fechas. De esta forma, el tribunal y las partes pueden constatar si el recurso de apelación se presentó dentro del tiempo que disponen las Reglas de Procedimiento Civil. Ante el peligro potencial del uso de

otro sobre originado en el mismo tribunal en un caso distinto, ordenamos a las secretarías de los diversos tribunales que crearan un registro, o levantaran un acta, que permitiera constatar si una sentencia, resolución u orden se notifica por correo en una fecha distinta a su archivo en autos. *Id.*, a la pág. 12. Advertimos a los abogados que el uso de sobres que no correspondieran al caso apelado para inducir a error al foro apelativo respecto a su jurisdicción, estaría sujeto a sanciones económicas y disciplinarias. *Id.*, a la pág. 13, n.5.

El Lcdo. López Montalvo estaba advertido, pues, de la seriedad e importancia de poder demostrar fehacientemente que hubo una discrepancia entre la fecha de archivo en autos de una sentencia y su notificación. Sabía de la directriz que habíamos impartido a las secretarías regionales sobre el registro de notificaciones en fechas distintas al archivo en autos. No obstante, se opuso a que tomásemos en consideración dicha certificación en este caso. Antes de eso pudo examinar la información al respecto que obraba en el sistema de Teletribunales, ofrecida por ACE en su moción de reconsideración. En fin, no actuó en un vacío.

La negligencia del Lcdo. Segismundo López Montalvo en el manejo de documentos que inciden en la jurisdicción del foro apelativo, admitida por él, y su obstinada insistencia en que no se considerase siquiera una

certificación oficial de la Secretaria del Tribunal de Primera Instancia que indudablemente aclaraba ese asunto son contrarias a la obligación de vigilancia para asegurar el buen orden de la administración de la justicia que requiere el Canon 9 y la diligencia y responsabilidad que requiere el Canon 12. No se trata de una mera inadvertencia o leve dejadez. Al Lcdo. López Montalvo se le advirtió de la incongruencia en franqueo entre el sobre que según él se utilizó para notificarle la sentencia y los sobres que recibieron los codemandados. En la etapa de la reconsideración ante el foro apelativo se le brindó información oficial que ponía en entredicho su alegación. En todo momento se negó a admitir las incongruencias y argumentó sin fundamento en contra de nuestra facultad para considerarlas, aún cuando ello iba dirigido a aclarar y asegurar la jurisdicción del foro apelativo, asunto que es, como hemos explicado en numerosas ocasiones, altamente privilegiado y que se puede levantar en cualquier etapa del proceso. Por ello, su conducta constituyó una violación a esos cánones.

Lo anterior evidencia una conducta altamente negligente, y una preocupante falta de diligencia en cuanto a su obligación de velar por la pureza y el buen orden de los procedimientos judiciales. No obstante, tomando en consideración que el Comisionado determinó que el querellado goza de una buena reputación profesional,

que no ha estado sujeto a otro proceso disciplinario y que ha reconocido el error cometido, limitamos la sanción disciplinaria a una suspensión del ejercicio de la profesión por el término de un mes.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Segismundo López Montalvo          CP-2005-18

*SENTENCIA*

En San Juan, Puerto Rico, a 26 de febrero de 2008.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte integrante de la presente Sentencia, a la luz de lo planteado y tomando en consideración que el Comisionado determinó que el querellado goza de una buena reputación profesional, que no ha estado sujeto a otro proceso disciplinario y que ha reconocido el error cometido, limitamos la sanción disciplinaria a una de suspensión del ejercicio de la profesión por el término de un mes.

Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del país.

Finalmente, el Alguacil de este Tribunal deberá notificar personalmente esta sentencia al abogado suspendido.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez inhibido. Los Jueces que intervienen lo hacen por Regla de Necesidad.


                              Aida Ileana Oquendo Graulau
                             Secretaria del Tribunal Supremo