EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Ismael Cuevas Velázquez | 2008 TSPR 138<br><br>174 DPR _____ |

Número del Caso: CP-1999-5

Fecha: 29 de julio de 2008

Abogado de la Parte Querellada:

Lcdo. Luis F. Abreu Elias

Oficina del Procurador General:

Lcda. Rosana Márquez Valencia
Procuradora General Auxiliar

Lcda. Cynthia Iglesias Quiñones
Procuradora General Auxiliar

Materia: Se deniega la solicitud de reinstalación al ejercicio
de la abogacía.

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Ismael Cuevas Velázquez                    CP-1999-5

*PER CURIAM*

San Juan, Puerto Rico, a 29 de julio de 2008

Instruimos al Procurador General de Puerto Rico para que presentara una querella contra el Lcdo. Ismael Cuevas Velázquez; ello en relación a una queja presentada ante el Tribunal por la Sra. Sonia Ramos Fuentes. Conforme a lo expuesto en la querella, el 29 de mayo de 1996 el licenciado Cuevas Velázquez presentó una demanda sobre daños y perjuicios a nombre de Ramos Fuentes y su hijo menor de edad. El tribunal de instancia señaló una conferencia con antelación al juicio para el 22 de mayo de 1997, señalamiento que le fue notificado, oportunamente, al licenciado Cuevas Velázquez. Éste, sin embargo, no compareció a la misma;

como consecuencia de su ausencia, la demanda fue desestimada. La querella radicada le imputa al licenciado Cuevas Velázquez, como primer cargo, una violación al Canon 9 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, por no acatar las órdenes del Tribunal de Primera Instancia y del Procurador General en la esfera disciplinaria. En el segundo cargo, se le imputa una violación al Canon 12 de los de Ética Profesional por no exhibir puntualidad en la tramitación del caso de Ramos Fuentes.

El 30 de marzo de 1999, le ordenamos al licenciado Cuevas Velázquez contestar la querella dentro de un término de quince días. El licenciado Cuevas Velázquez presentó una solicitud de prórroga, en la cual nos pidió un término adicional para presentar su alegación responsiva ya que Ramos Fuentes tenía el expediente del caso y un examen del mismo le resultaba necesario para contestar la querella. A su vez, nos solicitó que ordenáramos a Ramos Fuentes presentar el expediente del caso para examinarlo, en sus oficinas o en las oficinas del Procurador General. Denegamos tal solicitud; le ordenamos, nuevamente, que contestara la querella en su contra. El licenciado Cuevas Velázquez solicitó reconsideración, a lo cual respondimos en la negativa. Además, ante el incumplimiento con nuestra Resolución anterior, ordenamos la continuación de los procedimientos

y nombramos al Hon. Flavio E. Cumpiano Villanor como Comisionado Especial.

El 27 de septiembre de 1999, el Procurador General solicitó enmendar la querella a los efectos de incluir tres cargos adicionales. Como tercer cargo, se le imputó al licenciado Cuevas Velázquez no haber desplegado su más profundo saber y habilidad, ni actuar de forma adecuada y responsable en la tramitación del caso, incurriendo al así actuar en conducta violatoria del Canon 18 de los de Ética Profesional. De igual forma, por no mantener informado a su cliente sobre los asuntos surgidos durante la tramitación del pleito, mediante el cuarto cargo se le imputó una violación al Canon 19. Por último, se le imputó haber faltado a su deber de sinceridad y honradez con su representada, en contravención a lo establecido por el Canon 35 del Código de Ética Profesional.

El 15 de octubre de 1999, el licenciado Cuevas Velázquez contestó la querella, negando los cargos imputados. Asimismo, el 30 de octubre de 1999 presentó contestación a la querella enmendada, refutando las violaciones a los Cánones 18, 19 y 35 de los de Ética Profesional.

El 22 de febrero de 2000 se celebró la conferencia con antelación a la vista ante el Comisionado Especial, en la cual se ofreció el testimonio de Ramos Fuentes, el Lic. Luis Elvin González, el testimonio del propio querellado y de Ileana Rodríguez, quien fungió como su secretaria a la

fecha de los hechos que motivaron la querella. La prueba documental consistió del expediente del caso sobre daños y perjuicios radicado por el licenciado Cuevas Velázquez en representación de Ramos Fuentes y su hijo, y el contenido del expediente del caso que levantó el Lcdo. Cuevas Velázquez.

Mediante Sentencia de 29 de junio de 2000, y en relación con otra querella, en el caso *In re* Ismael Cuevas Velázquez, CP-1997-3, el Tribunal suspendió, con carácter inmediato e indefinidamente, del ejercicio de la abogacía al licenciado Cuevas Velázquez. Ante tal cuadro fáctico, el Comisionado Especial designado en el caso de epígrafe nos solicitó le informáramos el curso a seguir en cuanto al caso de epígrafe. Mediante Resolución de 15 de septiembre de 2000 instruimos al Comisionado Especial a continuar con el trámite disciplinario "a los fines de que podamos considerar su informe y recomendación en la eventualidad de que el querellado solicite reinstalación en el futuro." Así las cosas, se celebró ante el Comisionado Especial la vista en su fondo del caso de autos el 1 de noviembre de 2000 y presentada la prueba de las partes, quedó sometido el caso para el informe correspondiente.

El 6 de diciembre de 2002, la Directora de la Oficina de Inspección de Notarías, Lic. Carmen H. Carlos, presentó un informe sobre el estado de la obra notarial de Cuevas Velázquez, la cual fue incautada después de su suspensión;

solicitó que le ordenáramos a éste corregir los defectos hallados, lo cual hicimos oportunamente. Cuevas Velázquez adujo que no había podido trabajar desde que fue suspendido, y debido a que carecía de los recursos económicos necesarios para corregir inmediatamente las deficiencias señaladas, solicitó un término adicional para cumplir con nuestra orden; le concedimos un término adicional de 90 días.

Así las cosas, el 24 de julio de 2003, Cuevas Velázquez solicitó la reinstalación al ejercicio de la abogacía. Expresó que la conducta que motivó su suspensión no fue una correcta y por ello sentía un profundo arrepentimiento. Adujo que de ser reinstalado al ejercicio de la abogacía, desplegaría la mayor rectitud y cumpliría cabalmente con los postulados éticos que rigen nuestra profesión. En apoyo a su solicitud, incluyó cartas suscritas por diversos profesionales del derecho.

Solicitamos de Cuevas Velázquez que expusiera las razones por las cuales había incumplido con nuestra Resolución de 7 de febrero de 2003, en la cual le ordenamos corregir las deficiencias de su protocolo que le fueron notificadas por la Oficina de Inspección de Notarías. Asimismo, solicitamos acreditara su cumplimiento con las Resoluciones de 20 de diciembre de 2000[1] y de 2 de enero de 2001.[2]

---

[1] En la referida resolución, le ordenamos a que entregara a Luz Patria Mercado, ex cliente de Cuevas Velázquez que

(Continúa . . .)

Luego de solicitar, en dos ocasiones, un término adicional para contestar, Cuevas Velázquez presentó una moción informativa, indicando que había gestionado la corrección de las deficiencias del protocolo, pero que dicho proceso tomaría un periodo no menor de seis meses. No hizo expresión alguna relativa al cumplimiento de nuestras Resoluciones de 20 de diciembre de 2000 y de 2 de enero de 2001.

Nuevamente, el 28 de febrero de 2005, Cuevas Velázquez solicitó su reinstalación, alegando que había llevado a cabo numerosas gestiones para corregir las deficiencias en su protocolo, no habiendo todavía finalizado tal gestión. Sostuvo que, en aras de terminar con mayor rapidez dicha encomienda, le concediéramos "autorización notarial provisional y limitadamente…". Denegamos dicha solicitud de reinstalación, así como las dos solicitudes de reconsideración a tal determinación.

Finalmente, el 24 de enero de 2007, Cuevas Velázquez solicitó, por tercera ocasión, su reinstalación al ejercicio de la abogacía, expresando otra vez su arrepentimiento por los actos que motivaron su suspensión, el efecto aleccionador que tuvo tal suceso y arguyendo que estaba preparado para fungir como abogado nuevamente.

presentó una queja contra éste ante el Colegio de Abogados, todo documento relacionado a su caso.

[2] Le apercibimos que de no cumplir con la resolución de 20 de diciembre de 2000, sería hallado incurso en desacato.

En dicha ocasión, referimos el caso a la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía para que preparase un informe y recomendación. Luego de varios trámites procesales, la Comisión presentó moción informativa indicando que, en vista de que estaba pendiente de emitirse el informe del Comisionado Especial en torno a la acción disciplinaria contra Cuevas Velázquez que motivó el caso de epígrafe, consideraba aconsejable esperar a que se resolviera el caso de autos. Así lo determinamos.

El 27 de marzo de 2008, el Comisionado Especial emitió el informe sobre la acción disciplinaria que motiva el presente recurso; concluyó que Cuevas Velázquez había incurrido en violaciones a los Cánones 9, 12, 18, 19 y 35 de los de Ética Profesional. A la luz de todo lo anteriormente expuesto, resolvemos la solicitud de reinstalación radicada por Cuevas Velázquez.

I

A

El Canon 9 del Código de Ética Profesional regula lo relativo a la conducta de los abogados ante los tribunales. Éste le impone a los miembros de la clase togada la obligación de observar para con los tribunales una conducta que se caracterice por el mayor respeto. A tales efectos, dispone que:

> [e]llo incluye la obligación de desalentar y evitar ataques injustificados o atentados

> ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.
>
> El deber de respeto propio para con los Tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.

Ciertamente, el referido postulado ético incluye el deber de todo profesional del derecho de atender con igual atención y obediencia las órdenes que emiten los tribunales.

Es bien sabido que la desatención a las órdenes emitidas por los tribunales de justicia constituye una falta de respeto seria y, es a su vez, un atentado contra la autoridad de éstos, en directa violación al deber de conducta exigido por el Canon 9. *In re* López Montalvo, res. 26 de febrero de 2008, 2008 TSPR 42; *In re* González Carrasquillo, res. 24 de mayo de 2005, 2005 TSPR 78; *In re* Martínez Miranda, 160 D.P.R. 263 (2003); *In re* Soto Colón, 155 D.P.R. 623 (2001). Además, causa demoras irrazonables en el trámite de los casos, afectando así la administración de la justicia. *In re* Hoffman Mouriño, res. 7 de mayo de 2007, 2007 TSPR 114.

B

El Canon 12, 4 L.P.R.A. Ap. IX C. 12, le impone al abogado el deber de tramitar las causas de forma

responsable, con puntualidad y diligencia. Sobre el particular, establece que:

> [e]s deber del abogado hacia el tribunal, sus compañeros, las partes y testigos, ser puntual en su asistencia y conciso y exacto en el trámite y presentación de sus causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente.

Como consecuencia de ello, la incomparecencia injustificada a las vistas señaladas por el tribunal, ocasionando la suspensión de las mismas, y peor aún, la desestimación de la acción de su cliente, son violaciones patentes a dicho postulado. Así también lo es el incumplimiento del abogado con las órdenes del tribunal de primera instancia y de este Tribunal. La falta de diligencia en la tramitación de los casos constituye un patrón de conducta sumamente irresponsable y contrario a lo establecido en el Canon 12. *In re* López Montalvo, ante; *In re* Rosado Nieves, 159 D.P.R. 746 (2003); *In re* Grau Díaz, 154 D.P.R. 70 (2001).


C

El Canon 18 le exige a todo abogado el deber de desempeñarse de forma capaz y diligente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad, y actuando en aquella forma que la profesión jurídica en general estima adecuada y

responsable. De modo que, el abogado debe emplear la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez. *In re* Colón Morera, res. 23 de agosto de 2007, 2007 TSPR 157. Aquella actuación negligente que conlleve la desestimación o archivo de un caso, infringe el Canon 18 de Ética Profesional. *In re* Santos Rivera, res. 12 de diciembre de 2007, 2008 TSPR 12; *In re* Hoffman Mouriño, ante; *In re* Ortiz Velázquez, 145 D.P.R. 308 (1998).

El referido Canon 18 acoge los principios esbozados en los Cánones 9 y 12, en tanto exige que el abogado actúe de forma diligente en la tramitación de los casos. Así, cuando un abogado incumple injustificadamente las órdenes del tribunal, falta en su deber de notificar al cliente sobre las incidencias del caso, y por su descuido y negligencia, se desestima la reclamación de su cliente, también incurre en una violación al Canon 18. *In re* Ortiz Velázquez, ante.

D

El Canon 19 le impone al abogado el deber de mantener a su cliente informado de todo asunto que surja en el desarrollo del caso. Hemos reiterado que la obligación impuesta en el referido postulado incluye mantener informado al cliente de las gestiones realizadas y del desarrollo de éstas, consultar las cuestiones que no estén dentro ámbito discrecional de la representación legal, y

cumplir con las instrucciones de los representados. *In re Santos Rivera*, ante; *In re Pujol Thompson*, res. 19 de junio de 2007, 2007 TSPR 129.

Aun cuando el abogado tiene un deber de diligencia ineludible que ciertamente abarca su relación con el cliente, el deber de mantener informado a su cliente tiene vida propia a través de este Canon. *In re Hernández Pérez*, res. 25 de septiembre de 2006, 2006 TSPR 174. No informarle a un cliente sobre la desestimación o archivo de su caso, ciertamente constituye una violación al Canon 19. *In re Colón Morera*, ante; *In re Ortiz Velázquez*, ante. De igual forma lo es la falta de notificación al cliente sobre un señalamiento del tribunal, provocando a su vez que la incomparecencia al mismo motive la desestimación del pleito. *In re Colón Morera*, ante.

E

La conducta de todo miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros, debe ser sincera y honrada. Canon 35 de los de Ética Profesional. Hemos expresado que la verdad es un atributo inseparable del ser abogado, sin la cual la profesión jurídica no podría justificar su existencia. *In re Montañez Miranda*, 157 D.P.R. 275 (2002).

Igualmente, todo miembro de la clase togada debe exhibir una conducta que exalte el honor y la dignidad de su profesión, tanto en la vida privada como en el

desempeño de su profesión. Por lo cual, al atender los méritos de una acción disciplinaria, es indispensable evaluar si la conducta que se le imputa al abogado le hace indigno de pertenecer al foro. *In re* López González, res. 11 de junio de 2007, 2007 TSPR 120; *In re* Collazo Sánchez, 159 D.P.R. 769 (2003).

II

Un abogado que acepta un caso, y luego no mantiene a su cliente informado sobre lo que ocurre en el mismo, atenta contra los Cánones 12, 18 y 19. *In re* Verdejo Roque, 145 D.P.R. 83 (1998). Igualmente, la desestimación de un pleito debido a la negligencia del abogado constituye una violación crasa a los Cánones 12 y 18. Cuando tal negligencia consiste de no comparecer a un señalamiento del tribunal, el abogado quebranta los deberes impuestos por los Cánones 9, 12 y 18. Ello en vista de que el incumplimiento injustificado con las órdenes de un tribunal y la incomparecencia a los señalamientos del tribunal, son actuaciones contrarias al deber de observar el mayor respeto hacia los tribunales y actuar con puntualidad y diligencia al tramitar las causas. Todo lo anterior es, además, un grave atentado contra el deber de sinceridad y honradez impuesto en el Canon 35. *In re* Grau Díaz, ante.

De otra parte, la abogacía y la notaría requieren atención minuciosa, diligencia y cumplimiento de las

órdenes del tribunal, en particular cuando se trata de procedimientos relativos a la conducta profesional. *In re Maldonado Rivera*, ante. Es deber del abogado responder a los requerimientos del tribunal con prontitud y diligencia cuando se investiga una queja en su contra. *Id.* La dilación injustificada para contestar la querella es una falta de respeto al tribunal. *In re Pérez Rodríguez*, 115 D.P.R. 810 (1984). A su vez, la indiferencia ante las órdenes de este Tribunal acarrea sanciones disciplinarias severas. *In re Otero Fernández*, 145 D.P.R. 582 (1998); *In re Melecio Morales*, 144 D.P.R. 824 (1998).

Al determinar la sanción a imponerse, debemos tomar en consideración, entre factores múltiples, la reputación del abogado en la comunidad, su historial como profesional del derecho, si se trata de una primera falta o de una conducta aislada, si alguna parte ha resultado perjudicada y el cumplimiento del querellado con nuestras ordenes durante el procedimiento disciplinario. *In re Arroyo Rivera*, 148 D.P.R. 354 (1999); *In re Colón Morera*, ante.

## II

De entrada, no debemos perder de vista que Cuevas Velázquez fue admitido al ejercicio de la abogacía el 14 de diciembre de 1967, es decir, a la fecha de su suspensión en el 2000, llevaba 33 años en la práctica. Por lo cual, a raíz de su experiencia y la gran cantidad de

años ejerciendo la profesión, debió conocer a cabalidad las normas éticas que rigen nuestro quehacer.

De otra parte, resulta evidente que el cliente resultó perjudicado por las actuaciones de Cuevas Velázquez, ya que la reclamación de Ramos Fuentes, y luego la de su hijo, fue desestimada a causa del reiterado incumplimiento con las órdenes del tribunal y, finalmente, por la incomparecencia injustificada de Cuevas Velázquez a la conferencia con antelación al juicio. Todo ello a pesar de las advertencias del tribunal en torno a las consecuencias del incumplimiento reiterado de sus órdenes.

En su contestación a la querella enmendada, Cuevas Velázquez expuso que Ramos Fuentes acudió a sus oficinas por primera vez en mayo de 1996, por motivo de un accidente sufrido el 27 de enero de 1993 por su hijo de trece años, en el cual éste fue impactado por un vehículo propiedad de Aurea Nieves Cruz, que a su vez era conducido por el hijo de ésta. Alegó que, durante esa primera visita, Ramos Fuentes le expresó interés en presentar una demanda sobre daños y perjuicios por motivo del referido accidente y que, en dicha ocasión, le expresó a Ramos Fuentes que su reclamación en particular estaba prescrita por haber transcurrido más de un año desde el accidente. Cuevas Velázquez también sostuvo que le explicó a Ramos Fuentes que era necesario averiguar ciertos elementos, tales como la situación económica de los posibles demandados y si el vehículo estaba asegurado, ya que de no

ser así, las posibilidades de obtener indemnización por los daños sufridos eran mínimas.

Sin embargo, del informe del Comisionado Especial surge que el 7 de enero de 1994, Cuevas Velázquez le remitió una carta a Ramos Fuentes citándole a una entrevista inicial, la cual se llevó a cabo el 15 de enero de 1994. Ello presupone que Ramos Fuentes acudió a las oficinas de Cuevas Velázquez al menos antes del 7 de enero de 1994. Además, de lo anterior colegimos que, contrario a lo expresado por Cuevas Velázquez, la entrevista inicial no ocurrió en mayo de 1996, sino el 15 de enero de 1994. De modo que a la fecha en que Ramos Fuentes acudió a su oficina por primera vez e, incluso, a la fecha de la entrevista inicial, la reclamación de ésta no estaba prescrita. Mucho menos la de su hijo, quien era menor de edad y contra quien el término prescriptivo no había comenzado a correr. Por lo cual, sus alegadas expresiones en torno a que le informó a Ramos Fuentes desde que acudió por primera vez a sus oficinas, que su reclamación estaba prescrita, no son ciertas.

Durante la entrevista inicial, Ramos Fuentes le proveyó información detallada sobre el accidente, entre lo cual le indicó que la dueña del vehículo y el Policía a cargo del caso le expresaron al esposo de Ramos Fuentes que el vehículo estaba asegurado. Posterior a la referida entrevista, Cuevas Velázquez asumió la representación legal del caso.

El 1 de febrero y el 16 de mayo de 1994, Cuevas Velázquez cursó cartas al conductor del vehículo y presunto causante del accidente, indicándole que había asumido la representación legal de Ramos Fuentes y su hijo, y requiriéndole cierta información sobre el seguro del vehículo. Ello confirma una vez más que Ramos Fuentes contrató los servicios legales de Cuevas Velázquez desde el 1994 y no en el 1996, como éste alegó.

De hecho, Cuevas Velázquez continuó haciendo gestiones relativas al caso, aunque nunca presentó una reclamación extrajudicial que interrumpiera el término prescriptivo, ya que en las cartas cursadas al conductor del vehículo en momento alguno reclamó el resarcimiento de los daños ocasionados en el accidente. Aun cuando Cuevas Velázquez entendía que el caso no tenía mérito porque la prueba era insuficiente y los posibles demandados carecían de recursos económicos y de cubierta de seguro, Ramos Fuentes le expresó su interés de continuar con el mismo y éste accedió. De modo que asumió la responsabilidad que ello acarrea. Es decir, tenía el deber de tramitar el caso de forma responsable y con la diligencia debida a todo cliente.

Finalmente, el 4 de junio de 1996, Cuevas Velázquez presentó la demanda sobre daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, transcurridos dos años y cuatro meses desde la entrevista inicial de Ramos Fuentes. La parte demandada solicitó la

desestimación parcial de la demanda, bajo el fundamento de que la causa de acción de Ramos Fuentes estaba prescrita. El tribunal ordenó a Ramos Fuentes a expresarse sobre la referida moción, pero Cuevas Velázquez no cumplió con dicha orden. Tampoco hizo expresión o gestión alguna cuando el tribunal le ordenó que se expresara sobre la moción reiterando desestimación parcial presentada por la parte demandada. Cuevas Velázquez no le informó a Ramos Fuentes sobre las referidas mociones, presentadas por la parte demandada. Entretanto, Ramos Fuentes contestó de su puño y letra el interrogatorio cursado por la parte demandada, y lo remitió al abogado de ésta. En vista de que faltaba cierta información, el abogado de la demandada le cursó una carta a Cuevas Velázquez en torno al referido interrogatorio, pero éste no reaccionó en forma alguna a tal requerimiento.

El 19 de septiembre de 1996, se llevó a cabo una reunión sobre el estado de los procedimientos, a la cual Cuevas Velázquez no compareció, ni proveyó explicación alguna para su incomparecencia. El tribunal emitió una orden a Cuevas Velázquez para que mostrara causa por la cual no debía sancionarle por su incomparecencia y requirió, además, que proveyera la información solicitada en el interrogatorio que le fuera cursado a Ramos Fuentes por la parte demandada, bajo apercibimiento de la imposición de sanciones. Cuevas Velázquez no se expresó al respecto.

El tribunal citó a las partes a una conferencia con antelación al juicio a celebrarse el 22 de mayo de 1997. Sin embargo, el 19 de mayo de 1997, le fue notificada a Cuevas Velázquez la sentencia parcial desestimando la reclamación de Ramos Fuentes. Éste no presentó moción alguna en torno a la sentencia parcial, ni le informó a Ramos Fuentes sobre la misma.

Cuevas Velázquez había citado a Ramos Fuentes a su oficina para el 22 de mayo de 1997, acudiendo ésta a sus oficinas en dicha fecha según le fue requerido. Ramos Fuentes desconocía cual era el motivo de la reunión pautada. No obstante, acudió a la misma, y al llegar a la oficina de Cuevas Velázquez, éste le informó a Ramos Fuentes que habían "pospuesto" la razón para la cual la había citado y no proveyó información adicional sobre el caso. En esa ocasión, tampoco le informó a Ramos Fuentes que la demanda había sido desestimada parcialmente, ni que ese mismo día, el 22 de mayo de 1997, se llevaría a cabo la conferencia con antelación al juicio. Tómese en cuenta que en tal fecha, aun podía solicitarse reconsideración sobre la desestimación parcial de la demanda y acudir al señalamiento del tribunal.

Ante la incomparecencia de Cuevas Velázquez a la conferencia con antelación al juicio, y en vista de su incumplimiento reiterado con las órdenes del tribunal, en esa misma fecha, el foro de instancia dictó sentencia final, desestimando también la reclamación del hijo de

Ramos Fuentes. De modo que la demanda presentada por Ramos Fuentes fue archivada en su totalidad.

Posterior a ello, y tras no obtener información alguna sobre el estado del caso, Ramos Fuentes acudió al tribunal y advino en conocimiento de que habían desestimado la demanda en su totalidad. Insatisfecha con el desempeño de Cuevas Velázquez, Ramos Fuentes le expresó su interés de obtener el expediente de su caso, y buscó el mismo en la oficina de Cuevas Velázquez. La secretaria de Cuevas Velázquez le entregó a Ramos Fuentes el expediente de su caso en un sobre cerrado.

De todo lo antes expuesto, surge que Cuevas Velázquez no contestó las mociones de desestimación ni notificó a su cliente sobre éstas, tampoco compareció a la reunión pautada por el tribunal, ni a la conferencia con antelación al juicio, ni contestó los requerimientos del tribunal y de la parte demandada. Adicional a todo ello, nunca emplazó al conductor del vehículo. En su defensa, Cuevas Velázquez arguyó que tras descubrir que la parte demandada no tenía seguro, ni recursos económicos, y que el caso resultaría difícil de probar en vista de diversos factores[3], Ramos Fuentes le expresó que no tenía interés de proseguir con el caso y le dijo que lo "dejara morir". Incluso, alegó que ésta firmó una carta de su puño y letra, en la cual supuestamente le relevó de seguir con el

---

[3] Surge del expediente que el hijo de Ramos Fuentes, quien a la fecha de la presentación de la demanda, tenía casi 17 años, tenía un problema de adicción a las drogas.

caso. Sin embargo, la alegada carta de relevo no estaba en el expediente de Ramos Fuentes que fue examinado por el Comisionado Especial y Cuevas Velázquez ni intentó presentar prueba específica sobre el contexto en la cual la supuesta carta fue suscrita o en torno a su contenido, más allá de decir que se trataba de un relevo de proseguir con el caso.

Según bien destaca el Comisionado Especial, si conforme señaló Cuevas Velázquez, Ramos Fuentes no interesaba proseguir con el caso, el curso apropiado a seguir era la presentación de una moción de desistimiento sin perjuicio, en lugar de exponerse a sanciones económicas y a la desestimación del pleito. Además, si ella no deseaba continuar con el caso, resulta inexplicable porqué Ramos Fuentes acudió a sus oficinas en ocasiones repetidas para saber el estado de los procedimientos e igualmente cuando Cuevas Velázquez le citó se presentó en sus oficinas, para después alegar que el motivo de la citación había sido cancelado. Es decir, hasta el 22 de mayo de 1997, la fecha de la conferencia con antelación al juicio, Ramos Fuentes mostró interés en proseguir con el pleito, ya que de otro modo no hubiera acudido a las oficinas de Cuevas Velázquez ese día. Tampoco hubiese recogido el expediente de su caso posteriormente de no entender que podría remediar, de alguna forma, los errores que a su juicio cometió Cuevas Velázquez.

Los argumentos conflictivos y en ocasiones increíbles de Cuevas Velázquez, no le merecieron crédito al Comisionado Especial, quien tuvo ante sí toda la prueba testifical y documental presentada por las partes. De igual forma, no nos persuaden.

Las conclusiones del Comisionado Especial toman mayor relevancia cuando un estudio minucioso del expediente de Cuevas Velázquez demuestra que éste ha sido sancionado severamente y repetidamente, en ocasiones previas. De hecho, fue suspendido inmediata e indefinidamente del ejercicio de la abogacía mediante Sentencia de 29 de junio de 2000. Véase *In re* Ismael Cuevas Velázquez, 151 D.P.R. 593 (2000). Allí resolvimos que Cuevas Velázquez faltó a los deberes de diligencia, sinceridad y honradez que deben guiar los quehaceres de un abogado. A tales efectos, expresamos que era incomprensible que Cuevas Velázquez llevara 21 años intentando corregir los defectos que le fueron notificados y que impedían la inscripción de una escritura sobre partición de herencia, adjudicación de bienes, segregación y notificación de compraventa. Durante todo ese procedimiento Cuevas Velázquez desplegó conducta engañosa hacia sus clientes y hacia el tribunal, omitiendo intencionalmente información sobre los asuntos que le fueron encomendados, demostrando una indiferencia patente hacia el proceso e incumpliendo con los requerimientos de los tribunales, sin proveer justificación alguna. Por motivo de ello, así como de su aparente dejadez y falta de

interés, se le suspendió indefinidamente del ejercicio de la abogacía.

Sin embargo, ésta no fue la primera ocasión en que Cuevas Velázquez ha sido objeto de acción disciplinaria por este Foro. Mediante Sentencia de 29 de enero de 1975, le impusimos a Cuevas Velázquez una multa de $200 por no observar "el debido respeto a que son acreedores los tribunales, en particular por parte de los miembros de la profesión de abogados." Pueblo v. Cuevas Velázquez, 103 D.P.R. 290, 295 (1975). En tal ocasión, durante un juicio criminal, Cuevas Velázquez adujo varias veces que el juez de instancia le estaba haciendo señas al jurado, en perjuicio de su cliente. A pesar de que el juez le concedió la oportunidad de retractarse en su imputación, Cuevas Velázquez se reiteró en su posición, a causa de lo cual le fue impuesto un desacato sumario y una pena de diez días en la cárcel. Modificamos la pena impuesta por entender que era desproporcionada al carácter del delito cometido, pero sostuvimos la determinación del foro primario, en tanto su conducta menoscabó la importancia del respeto y decoro que deben desplegar los abogados en todo quehacer ante los tribunales.

Posterior a su suspensión decretada el 29 de junio de 2000, mediante moción informativa de 6 de septiembre de 2000, el Colegio de Abogados nos informó sobre dos quejas que fueron presentadas ante la Comisión de Ética Profesional contra Cuevas Velázquez, por Luz Patria

Mercado Castro y Rubén Torres Martínez. En vista de que en tal fecha, Cuevas Velázquez estaba suspendido del ejercicio de la abogacía, emitimos resolución indicando que se tomaría en consideración la presentación de las referidas quejas una vez éste solicitara reinstalación a la profesión.

Nuevamente, el 29 de septiembre de 2000, el Colegio de Abogados nos remitió una moción informativa sobre la queja informal presentada por Lucila Burgos García en contra de Cuevas Velázquez. Dicha queja también se incluyó en el expediente del referido abogado en la eventualidad de que éste solicitara la reinstalación en el futuro.

Posteriormente, Luz Patria Mercado Castro presentó ante este Tribunal una carta en su puño y letra, expresando su insatisfacción con el trabajo de Cuevas Velázquez y solicitando le ordenáramos a éste a entregarle todo documento relacionado a su caso. El 20 de diciembre de 2000 emitimos resolución concediéndole a Cuevas Velázquez un término de diez días para entregarle a Patria Mercado todo documento relacionado al caso que tramitó en representación de ésta. No obstante, Cuevas Velázquez incumplió con la referida orden, por lo cual le concedimos un término adicional de diez días para cumplir con nuestra resolución de 20 de diciembre de 2000, bajo apercibimiento de desacato.

El 25 de enero de 2001 y el 12 de noviembre de 2002, el Colegio de Abogados presentó dos mociones informativas

adicionales, indicando que otras quejas habían sido presentadas contra Cuevas Velázquez, en dicha ocasión por Víctor Vázquez Rosario y Johnny Ortiz Curet respectivamente. Las referidas mociones también fueron incluidas en el expediente de Cuevas Velázquez.

Según señalamos anteriormente, conforme a lo solicitado por la Directora de la Oficina de Inspección de Notarías, Lic. Carmen H. Carlos, mediante resolución de 7 de febrero de 2003, le ordenamos a Cuevas Velázquez a corregir las deficiencias halladas en su protocolo. En vista de que Cuevas Velázquez adujo que carecía de los recursos económicos para ello, le concedimos un término adicional de 90 días para cumplir con nuestra orden. Después de transcurrido dicho plazo, el 24 de julio de 2003, Cuevas Velázquez presentó su primera solicitud de reinstalación al ejercicio de la abogacía.

Luego de un examen del informe rendido por el Comisionado Especial, y habiendo evaluado el expediente de Cuevas Velázquez, _resolvemos que no procede reinstalarle al ejercicio de la abogacía_. _No merece ese privilegio_. El reiterado incumplimiento con las órdenes de los tribunales, su clara dejadez y menosprecio en la tramitación de los casos que le han sido encomendados y la falta de diligencia, honradez y sinceridad que ha desplegado a través de los años es patente. De igual forma, ha incumplido con nuestras órdenes durante el procedimiento de acción disciplinaria que ahora culmina.

Específicamente, hemos destacado que los abogados deben responder con premura a los requerimientos relacionados a quejas por conducta profesional y no de hacerlo, enfrentan sanciones disciplinarias serias. *In re* Arroyo Rivera, ante. No se trata sólo de un incidente aislado, sino de un patrón de conducta que resulta detrimental para la profesión y en forma alguna enaltece la toga. No podemos avalar dicha conducta bajo circunstancia alguna.

## III

En mérito de lo antes expuesto, procede denegar la solicitud de reinstalación al ejercicio de la abogacía de Ismael Cuevas Velázquez.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Ismael Cuevas Velázquez                    CP-1999-5


SENTENCIA

San Juan, Puerto Rico, a 29 de julio de 2008

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual forma parte íntegra de la presente, se deniega la solicitud de reinstalación al ejercicio de la abogacía de Ismael Cuevas Velázquez.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo